1   GARY R. GLEASON (SB# 136167)
    MARGARET A. BURTON (SB# 193386)
2   FARBSTEIN & BLACKMAN
    A Professional Corporation
3   411 Borel Avenue, Suite 425
    San Mateo, California  94402-3518
4   Tel: 650-554-6200; Fax: 650-554-6240
    Local Counsel for Defendant,
5   FIDELITY NATIONAL PROPERTY AND
    CASUALTY INSURANCE COMPANY
6

7   GERALD J. NIELSEN (La. S.B. 17078)
    MARY ELLEN WYATT (La. S.B. 30805)
8   NIELSEN LAW FIRM, L.L.C.
    3838 N. Causeway Blvd.  Suite 2850
9   Metairie, Louisiana 70002
    Tel: 504- 837-2500; Fax: 504- 832-9165
10  Of Counsel for Defendant,
    FIDELITY NATIONAL PROPERTY AND
11  CASUALTY INSURANCE COMPANY

12

13              UNITED STATES DISTRICT COURT

14      NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

15

| | |
|---|---|
| GUS SHUWAYHAT, SELMA SHUWAYHAT, MANWEL SHUWAYHAT, ) ) ) | CASE NO. C-07-05351 MHP |
| Plaintiffs, ) ) ) | DEFENDANT'S NOTICE OF MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FRCP 12(b)(6)TO DISMISS STATE LAW BASED CLAIMS |
| vs. ) ) ) | |
| FIDELITY NATIONAL PROPERTY AND CASUALTY INSURANCE COMPANY, ) ) ) | AND MEMORANDUM  IN SUPPORT THEREOF |
| Defendant. ) ) ) | Date:       June 30, 2008<br>Time:       2:00 p.m.<br>Courtroom:  15 |

<u>NOTICE OF MOTION</u>

To Plaintiffs  GUS SHUWAYHAT, SELMA SHUWAYHAT, MANWEL SHUWAYHAT("Plaintiffs") and their Attorney of Record:

NOTICE IS HEREBY GIVEN that on June 30, 2008 at 2:00 p.m. or as soon thereafter as the matter may be heard, in Courtroom 15 of the United States District Court, Northern  District of California, San Francisco Division, located at 450 Golden Gate Ave.,San Francisco, CA 94102,  Defendant Fidelity National Property and Casualty Insurance Company will, and hereby does, move this Court for an order granting Motion to Dismiss and thereby dismissing all of the state law based allegations and theories of recovery of the Plaintiffs' Complaint, including , punitive damages, fraud, compensatory damages, consequential damages, interest, emotional distress, and the alleged breach of the duty of good faith and fair dealing, leaving only the breach of contract action and the related declaratory relief claim.

The motion will be based on this notice of motion, the following memorandum of points and authorities, the papers, records, and file herein, and such evidence and/or arguments as may be presented at the hearing of the motion.

Dated this19th day of May, 2008.

Respectfully submitted,

Gary R. Gleason (SB#136167)
FARBSTEIN & BLACKMAN
411 Borel Avenue, Suite 425
San Mateo, California 94402-3518
P: 650-554-6200; F: 650-554-6240
Local Counsel for Defendant
FIDELITY NATIONAL PROPERTY AND
CASUALTY INSURANCE COMPANY

# TABLE OF CONTENTS

I.     FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       A.   The Analysis of Fidelity's Claims Handling Is Not Subject to State Law
            Standards, but to the Strict Construction Mandate of the NFIP. . . . . . . . . . . 2

       B.   As a Matter of Law, Fidelity Has No Financial Interest in Denying the
            Plaintiffs' Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       C.   State Law Claims Are Preempted by Federal Law.. . . . . . . . . . . . . . . . . . . . . 3

III.   STANDARD OF REVIEW UNDER FRCP 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . 5

IV.    LAW AND ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       A.   Law Governing Claims is Exclusively Federal. . . . . . . . . . . . . . . . . . . . . . . . . 7
            1.   States Have Never Had Authority Over The NFIP. . . . . . . . . . . . . . . 8
            2.   Policy Mandates are "Strictly Construed" Because of the Constitution
                 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       B.   Traditional Preemption Analysis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
            1.   Express Preemption . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
            2.   Conflict Preemption.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

       C.   Types of Extra-Contractual Claims Rejected by Courts. . . . . . . . . . . . . . . . 18
            1.   Breach of the Duty of Good Faith and Fair Dealing.. . . . . . . . . . . . 18
            2.   Emotional Distress Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
            3.   Punitive Damages of Any Type Are Not Recoverable Under The Act
                 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
            4.   Interest is Not Recoverable.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
            5.   Consequential Damages Are Excluded.. . . . . . . . . . . . . . . . . . . . . . . 21

V.     CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

DEF'S NTC & MEMO OF PTS. & AUTHS. IN SUPP.
OF MTN. TO DISMISS STATE LAW CLAIMS

## TABLE OF AUTHORITIES

I.      U.S. CONSTITUTION

Art. 1 §8 Par. 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Art. 1 §9 Par. 7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Art. 6 Par. 2.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10


II.     U.S. SUPREME COURT

Barnett Bank of Marion County v. Nelson, 517 U.S. 25 (1996). . . . . . . . . . . . . . . . . . . . . . 8, 9

Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380 (1947). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 4 L. Ed. 579 (1819). . . . . . . . . . . . . . . . 10

Office of Personnel Management v. Richmond, 469 U.S. 414 (1990). . . . . . . . . . . . . . . 11, 12

Stinson v. United States, 508 U.S. 36,113 S.Ct. 1913 (1993),. . . . . . . . . . . . . . . . . . . . . . . . . 13


III.    U.S. CIRCUIT COURT

Atlas Pallet Inc. v. Gallagher, 725 F.2d 131 (1st Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . 7

C.E.R. 1988, Inc.  v.  Aetna 386 F.3d 263 (3rd. Cir. 2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir.1989). . . . . . . . . . . . . . . . 5

Flick v. Liberty Mutual Ins., 205 F.3d 386 (9th Cir. 2000), cert denied, 531 U.S. 927 (2000)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11, 15, 16

Gibson  v. American Bankers Ins. Co., 289 F.3d 943 (6th Cir. 2002). . . . . . . . . . . . . . . . . . . 3

Gowland v. Aetna, 143 F.3d 951 (5th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11

Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 fn.19 (9th Cir. 1989)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Hanover Building Materials, Inc. v. Guiffrida, 748 F.2d 1011 (5th Cir. 1984).. . . . . . . . . . . 8

In re Estate of Lee v. NFIP, 812 F.2d 253 (5th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Leland v. Federal Insurance Administrator, 934 F.2d 524 (4th Cir. 1991). . . . . . . . . . . . . . . 8

Mack v. South Bay Beer Distrib., 798 F.2d 1279 (9th Cir.1986), abrogated on other
grounds, Astoria Federal Sav. and Loan Ass'n v. Solimino, 501 U.S. 104 (1991). . . . . . . . . 6

Mussoline v. Morris, 692 F.Supp. 1306 (S.D. Fla. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Newton v. Capital Assur. Co., Inc., 209 F.3d 1302 (11th Cir. 2000). . . . . . . . . . . . . . . . . . . . 6

1  Newton v. Capital Assurance Corp., 245 F.3d 1306  (11th Cir., 2001). . . . . . . . . . . . . . . . 21

2  Sandia Oil Co., Inc. v. Beckton, 889 F.2d 258 (10th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . 21

3  Sodowski v. National Flood Ins. Program, 834 F.2d 653 (7th Cir. 1987), cert. denied, 486
   U.S. 1043 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

4
   U.S. v. Parish of St. Bernard, 756 F.2d 1116 (5th Cir. 1985), cert. denied, 474 U.S. 1070
5  (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

6  Van Holt v. Liberty Mutual Insurance Co., 163 F.3d 161 (3rd Cir. 1998). . . . . . . . . . . . . 6, 15

7  Wagner v. Director, FEMA, 847 F.2d 515 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

8  West v. Harris, 573 F.2d 873 (5th Cir., 1978), cert. denied 440 U.S. 946 (1979). . . . 12, 16, 20

9  Wright v. Allstate, 2007 WL 2636725 (5th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

10 Wright v. Director, FEMA, 913 F.2d 1566 (11th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . 8

11 Wyler Summit Partnership v. Turner Broadcasting System, Inc., 135 F.3d 658, 661 (9th Cir.
   1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
12

13  IV.    U.S. DISTRICT COURT

14
   3608 Sounds Ave. Condo. Assn. v. South Carolina Ins. Co., 58 F.Supp.2d 499 (D. N.J. 1999)
15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

16 Axelrod v. Bankers Ins. Co., Docket No. C-99-2663 ARB (N.D.Cal. 01/29/01). . . . . . . . . . 5

17 Bianchi v. State Farm Fire and Cas. Co., 120 F.Supp. 2d 837 (N.D.Cal. 2000). . . . . . . . . . . 4

18 Brown v. Omaha Property and Casualty Insurance Company,  Civil Action No. SA-03-0721
   (W.D. TX., 1/6/04, adopting report and recommendation of Magistrate Judge dated
19 12/5/03). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15

20 Cohen v. State Farm Fire & Casualty Ins. Co., 68 F.Supp.2d 1151 (C.D.Cal. 1999). . . . . . . 4

21 Davis v. Travelers Property and Casualty Company, 96 F.Supp.2d 995 (N.D.Cal. 2000). . . . 4

22 Eddins v. Omega Ins. Co., 825 F.Supp. 752 (N.D. Miss. 1993). . . . . . . . . . . . . . . . . . 3, 19, 20

23 Fonseca v. Bankers Ins. Co., Docket No. C-99-1910 ARB (N.D.Cal. 03/16/01). . . . . . . . . . 5

24 Friedman v. South Carolina Ins. Co., 855 F.Supp. 348 (M.D.Fla.1994). . . . . . . . . . . . . . . . 16

25 Friedman v. South Carolina Ins. Co., 855 F.Supp. 348 (M.D.Fla.1994). . . . . . . . . . . . . . . . 16

26 Garcia v. Omaha Prop. and Cas. Ins. Co., 933 F.Supp 1064, 1070 (S.D.Fla. 1995), aff'd. 95
   F.3d 58 (11th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
27
28 Hayes v. Allstate Insurance Company, Case No. CV-03-PT-3343-S (N.D.
   Alabama, 6/14/2004, adopted by court on 7/12/2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15

DEF'S NTC & MEMO OF PTS. & AUTHS. IN SUPP.
OF MTN. TO DISMISS STATE LAW CLAIMS

Jamal v. Travelers, 97 F.Supp.2d 800 (S.D. Tex 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Mason v. Witt, 74 F.Supp.2d 955 (E.D.Cal. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 19

Masoner v. First Community Insurance Co., 81 F.Supp.2d 1052 (D.Idaho 2000). . . . . . . . . 9

Messa Omaha Property & Cas. Ins. Co., 122 F.Supp.2d 513 (D.N.J. 2000). . . . . . . . . . . 3, 21

Miller v. Omaha Property & Cas. Ins. Co. 1997 WL 33833419,   (S.D.Tex.,1997). . . . . . . . 19

Neill v. State Farm Fire and Cas. Co., 159 F.Supp.2d 770 (E.D. Pa. 2000). . . . . . . . . . . . . . 3

Novikov v. Allstate Ins, Co., 2001 WL 880852 (E.D.Cal. July 11, 2001). . . . . . . . . . . . 3, 4, 19

Pecarovich v. Allstate Insurance Company, 272 F.Supp.2d 981 (C.D.Cal. 2003). 1, 3, 4, 17,19

Rockland Federal Credit Union v. Witt, 853 F.Supp. 14 (D.Mass. 1994). . . . . . . . . . . . . . . 7

Scherz v. South Carolina Insurance Co., 112 F.Supp.2d 1000 (C.D.Cal. 2000). . 1, 3, 4, 6, 15, 17-19

Smoak v. Independent Fire Ins. Co., 874 F.Supp. 110 (D.S.C. 1994). . . . . . . . . . . . . . . . . . . 7

Texas Landowners Rights Assoc. v. Harris, 453 F. Supp. 1025 (D.C. 1978), aff'd, 598 F.2d 311 (D.C. Cir. 1979), cert. denied, 444 U.S. 927 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

V.      U.S. STATUTES

15 U.S.C. §1012(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

42 U.S.C. § 4001. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

42 U.S.C. §4013. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

42 U.S.C. §4017. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 15

42 U.S.C. §4019. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-13, 15

42 U.S.C. §4071. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

42 U.S.C. §4072. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

VI.      FEDERAL REGULATIONS

44 C.F.R. Part 59. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

44 C.F.R. Part 61, Appendix A(1), (1998 edition). . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 17

44 C.F.R. §§62.23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

VII.      CALIFORNIA STATE COURT

McCormick v. Travelers, 103 Cal.Rptr.2d 258 (Cal. App. 1st. Cir. 2001), review denied. . . . 6

DEF'S NTC & MEMO OF PTS. & AUTHS. IN SUPP.
OF MTN. TO DISMISS STATE LAW CLAIMS

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

This action consists of a purported claim by GUS SHUWAYHAT, SELMA SHUWAYHAT, MANWEL SHUWAYHAT("Plaintiffs") against a Standard Flood Insurance Policy issued under the National Flood Insurance Program ("NFIP"). Defendant FIDELITY NATIONAL PROPERTY AND CASUALTY INSURANCE COMPANY ("Fidelity") issued the subject policy pursuant to the "Write Your Own" program, whereby private insurers act as a conduit for the issuance of the Federal flood insurance policy.   Consequently, and as more fully explained below, all claims other than the breach of contract claim should be dismissed,  since such claims are preempted and barred by federal Constitutional, statutory and regulatory law.  Indeed, the statutory scheme underlying flood insurance expressly preempts state law based claims as per Article IX of the Standard Flood Insurance Policies at issue (codified and found in its entirety at 44 C.F.R. Part 61, Appendix A(1), (1998 edition)[1]. If Plaintiffs are bringing claims under the "federal common law," there are no such viable claims.  The Fifth Circuit recently addressed this issue in Wright v. Allstate, 2007 WL 2636725 (5th Cir. 2007)[2].  The court in Wright found that no federal common law right of action to bring extra-contractual claims can be inferred under the NFIA.

Other courts within the state of California have granted this exact Motion, including the decisions in Pecarovich v. Allstate Insurance Company, 272 F.Supp.2d 981 (C.D.Cal. 2003), wherein Judge Collins expressly relied upon Judge Matz's reasoning in Scherz v. South Carolina Insurance Co., 112 F.Supp.2d 1000 (C.D.Cal. 2000).  Most recently the Third Circuit recognized federal preemption within the NFIP in C.E.R. 1988, Inc.  v. Aetna 386 F.3d 263 (3rd. Cir. 2004).[3]

Defendant FIDELITY NATIONAL PROPERTY AND CASUALTY INSURANCE COMPANY respectfully submits that the law and facts unequivocally

[1]Attached as Exhibit 1 hereto.

[2]  Attached as Exhibit 2 hereto.

[3] Attached as Exhibit 3 hereto.

1  support, and indeed require, the dismissal of all claims except for the breach of contract

2  claim.

3

4  I.    FACTUAL BACKGROUND

5       Plaintiffs are the owner of a residence located at 94 Sir Frances Drake Blvd, Ross,

6  California 94957-9999.  The structure was  insured under U.S. Treasury-underwritten

7  Standard Flood Insurance Policy ("SFIP") Number 04-7700036867 issued by and through

8  Fidelity National Property and Casualty Insurance Company ("Fidelity") in its capacity as a

9  Write Your Own Carrier participating in the U.S. Government's National Flood Insurance

10 Program ("NFIP").  See Plaintiffs' Complaint, ¶2. Plaintiffs' SFIP had building coverage

11 limits of $250,000.00 for building damage with a $1,000.00 deductible.  See Plaintiffs'

12 Complaint.  ¶2, and Exhibit "1" thereto.

13      On or about December 31, 2005, Plaintiffs  allegedly suffered a flood loss to their

14 residence.  See Plaintiffs' Complaint, ¶3.  Plaintiffs reported the flood loss to Fidelity.  See

15 Plaintiffs' Complaint at ¶ 4.  Plaintiffs now claims that they are entitled to actual damages,

16 interest, consequential damages, punitive damages, and compensatory damages.  See

17 Plaintiffs' Complaint, ¶¶11, 17 and the Prayer for Relief following ¶17.

18      Importantly, all claims for benefits under the SFIPs are paid for with U.S. Treasury

19 funds and not the funds of Fidelity.  See Flick v. Liberty Mutual Ins. Co., 205 F.3d 386, 387

20 (9th Cir., 2000), cert. denied 531 U.S. 927 (2000).  Thus, for the December 31, 2005, loss,

21 Plaintiffs were paid more than $11,266.32 in U.S. Treasury benefits under their SFIP.

22      Before paying any additional amounts for the alleged loss of December 31, 2005,

23 and in observing its statutory duty to the U.S. Government pursuant to the NFIP, Fidelity

24 asked the Plaintiffs to demonstrate (1) that the water actually entered the living area of the

25 dwelling structure; (2) to demonstrate that the repairs he was seeking did not constitute an

26 enhancement of the building and (3) to provide receipts evidencing all repairs to date.

27 Plaintiffs have been unable to prove the prerequisites, and consequently have not met the

28 policy requirements for payment of any additional amounts of U.S. Treasury funds under

1   the Standard Flood Insurance Policy.

2   However, the plaintiffs here do not limit their allegations to questions of

3   interpretation of and compliance with the terms of the SFIP.  The plaintiffs sue Fidelity for

4   a host of state law claims.  Fidelity now moves to dismiss those claims for punitive damages,

5   fraud, compensatory damages, consequential damages, interest, emotional distress, and the

6   alleged breach of the duty of good faith and fair dealing, leaving only the breach of contract

7   action and the related declaratory relief claim.

8   This should solely pertain to the alleged breach of contract and related declaratory relief

9   allegations.

10

11  II.    SUMMARY OF ARGUMENT

12  Plaintiffs sued Fidelity because of the decision not to pay the plaintiff any additional

13  federal benefits under a U.S. Treasury-underwritten SFIP.  Relying upon California state

14  law and/or federal common law, the Plaintiffs seek not only a federal recovery under the

15  SFIP, but, in addition, seek extra contractual remedies under state law based theories,

16  premised upon their belief that the flood insurance claim was not properly handled.

17  However, there are <u>three</u> fundamental flaws in the Plaintiff's position:

18

19        A.    <u>The Analysis of Fidelity's Claims Handling Is Not Subject to State Law
              Standards, but to the Strict Construction Mandate of the NFIP.</u>

20

21  Fidelity was never allowed (or expected to) adjust the Plaintiffs' National Flood

22  Insurance Program ("NFIP") claims in accordance with the typical "reasonableness"

23  principles embodied in the various States' consumer  protection laws.  To the contrary,

24  Fidelity was, at all times, Constitutionally required to "strictly construe and enforce" all of

25  the provisions of the SFIP during the claims adjustment process.  See Flick v. Liberty

26  Mutual Ins., 205 F.3d 386, 391-392 (9th Cir. 2000), cert denied, 531 U.S. 927 (2000);

27  Gowland v. Aetna, 143 F.3d 951, 954 (5th Cir. 1998).

28

1

    B.    <u>As a Matter of Law, Fidelity Has No Financial Interest in Denying the Plaintiffs' Claim</u>

2

3

    Fidelity never had any incentive whatsoever to pay its customers anything less than top dollar on their NFIP claims.   The money to be paid would be Federal funds, not Fidelity's money.  Furthermore, Fidelity profits from the payment of claims, and not the denial.  As has been recognized by many courts, including specifically Scherz v. South Carolina Insurance Co., 112 F.Supp.2d 1000, 1008 (C.D.Cal. 2000); 3608 Sounds Ave. Condo. Assn. v. South Carolina Ins. Co., 58 F.Supp.2d 499 (D. N.J. 1999) and Eddins v. Omega Ins. Co., 825 F.Supp. 752 (N.D. Miss. 1993), insurance companies that issue the U.S. Government's SFIP are paid by FEMA on a percentage of claims paid basis, such that the higher the claim payment, the <u>more</u> the carrier is paid by FEMA.  See  44 C.F.R. Pt. 62, App. A, Art. III(C) (WYO carrier makes 3.3% commission on payment of a covered claim).  Thus, if this Court were to rule against Fidelity on the breach of contract action, Fidelity would actually <u>profit</u> by paying the Plaintiffs.

4

5

6

7

8

9

10

11

12

13

14

15

    C.    <u>State Law Claims Are Preempted by Federal Law.</u>

16

    As has been held by virtually every court to consider the issue, <u>all</u> state law based extra-contractual claims sought to be raised in the context of an SFIP claim are barred and preempted by federal law.  See Pecarovich v. Allstate Insurance Company, 272 F.Supp.2d 981 (C.D.Cal. 2003); Scherz v. South Carolina Insurance Co., 112 F.Supp.2d 1000, 1008 (C.D.Cal. 2000);  Novikov v. Allstate Ins, Co., 2001 WL 880852 (E.D.Cal. July 11, 2001)[4]; Mason v. Witt, 74 F.Supp.2d 955 (E.D.Cal. 1999); Gibson  v. American Bankers Ins. Co., 289 F.3d 943 (6th Cir. 2002); Neill v. State Farm Fire and Cas. Co., 159 F.Supp.2d 770 (E.D. Pa. 2000); Messa Omaha Property & Cas. Ins. Co., 122 F.Supp.2d 513 (D.N.J. 2000)

17

18

19

20

21

22

23

24

25

26

27

28

    [4]The Pecarovich, Scherz and Novikov rulings are attached hereto as Exhibits 4, 5 and 6, respectively.

DEF'S NTC & MEMO OF PTS. & AUTHS. IN SUPP. OF MTN. TO DISMISS STATE LAW CLAIMS

1    are just some of the many holdings taking this view.[5]  See also Exhibit 9, that being a list of

2    NFIP cases finding preemption of state law based extra-contractual claims.

3         Once these three legal propositions are understood, the following point becomes

4    clear:  The Plaintiffs clearly has the right to ask this Court to evaluate whether it is entitled

5    to further  U.S. Treasury benefits under the contract at issue, the SFIP.  However, the

6    Plaintiffs plainly may not cajole Fidelity, the U.S. Government's "fiduciary" and "fiscal

7    agent", into releasing federal funds to them by threatening said federal fiscal agent with

8    state law based extra-contractual claims.

9         California federal courts have addressed the issue of preemption in the context of

10   state law based claims.  See Pecarovich v. Allstate Insurance Company, 272 F.Supp.2d 981

11   (C.D.Cal. 2003), In Percarovich, Judge Collins, relies upon Judge Matz's reasoning in

12   Scherz v. South Carolina Insurance Co., 112 F.Supp.2d 1000 (C.D.Cal. 2000),[6] and holds

13   that state law based claims arising out of flood insurance claims handling matters are

14   barred and preempted by federal Constitutional, statutory and regulatory law.

15        Notably, other courts within the Ninth Circuit have ruled that state law extra-

16   contractual claims are preempted by federal law.  See Novikov v. Allstate Ins, Co., 2001 WL

17   880852 (E.D.Cal. July 11, 2001); Mason v. Witt, 74 F.Supp.2d 955 (E.D.Cal. 1999); and

18   Bianchi v. State Farm Fire and Cas. Co., 120 F.Supp. 2d 837 (N.D.Cal. 2000).   The only

19   published decision  to differ from these cases within the Ninth Circuit is Davis v. Travelers

20   Property and Casualty Company, 96 F.Supp.2d 995 (N.D.Cal. 2000).   However, Davis is no

21   longer good law as the analysis contained therein was effectively overruled by FEMA's

22

23   [5]  There are additional and more recent decisions wherein a court dismissed state law
     claims and remedies.  However, these decisions relate to a later version of the SFIP.  See
24   e.g., Brown v. Omaha Property and Casualty Insurance Company,  Civil Action No. SA-03-
     0721 (W.D. TX., 1/6/04, adopting report and recommendation of Magistrate Judge dated
25   12/5/03);  Hayes v. Allstate Insurance Company, Case No. CV-03-PT-3343-S (N.D.
     Alabama, 6/14/2004, adopted by court on 7/12/2004) attached as Exhibits 7 and 8
26   respectively.)

27

28   [6]  Please note that in Scherz, Judge Matz repudiated his prior ruling in Cohen v. State Farm
     Fire & Casualty Ins. Co., 68 F.Supp.2d 1151 (C.D.Cal. 1999), finding that state law claims
     against a WYO carrier are indeed preempted by federal law.

1  post-Davis clarification of Article IX ("What Law Governs") of the SFIP as done and

2  effective December 31, 2000, which made it clear that only federal courts and federal law

3  may be used for claims handling issues under the SFIP.[7]

4        Further, judges within this District have refused to follow Davis and hold that state

5  law based extra-contractual claims are preempted by federal law.  See Axelrod v. Bankers

6  Ins. Co., Docket No. C-99-2663 ARB (N.D.Cal. 01/29/01);[8] see also Fonseca v. Bankers Ins.

7  Co., Docket No. C-99-1910 ARB (N.D.Cal. 03/16/01).[9]

8        By filing this motion, Fidelity seeks to make certain that it can fulfill its fiduciary

9  responsibilities to FEMA during this litigation.  Fidelity seeks to know that if it honors its

10  Constitutional obligation to "strictly construe and enforce" the provisions of the U.S.

11  Treasury-underwritten SFIP, that it will not risk punishment for said decision under state

12  law.  Fidelity has no problem presenting the breach of contract action for this Court's

13  review.  If the Court believes the Plaintiffs are entitled to federal benefits under the NFIP,

14  and so orders such payment, then the system of review designed by FEMA and Congress

15  has worked as it should.  However, as neither FEMA nor Congress has allowed for any role

16  by the States in claims adjustment, the additional threat of state law based liability is  not

17  available to  sway Defendant Fidelity from doing its job for FEMA.

18

19  III.    STANDARD OF REVIEW UNDER FRCP 12(b)(6)

20        The Ninth Circuit has held that "[t]he principal difference between motions filed

21  pursuant to Rule 12(b) and Rule 12(c) is the time of filing" and that "[b]ecause the motions

22  are functionally identical, the same standard of review applicable to a Rule 12(b) motion

23  applies to its Rule 12(c) analog." Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192

24  (9th Cir.1989).  All well pleaded facts (as opposed to conclusory allegations) contained

25  _____

26  [7]  In addition, Davis has been subsequently criticized by several courts for its failure to
    extend deference to the position of FEMA in that matter.  See e.g. Novikov, supra, 2001
    WL 880852 at page 5 of Exhibit 6.

27

28  [8]  A copy of the Axelrod Order is attached hereto as Exhibit 10.

    [9]  A copy of the Fonseca Order is attached hereto as Exhibit 11.

DEF'S NTC & MEMO OF PTS. & AUTHS. IN SUPP.
OF MTN. TO DISMISS STATE LAW CLAIMS

1  within the Complaint are to be accepted as true. See Wyler Summit Partnership v. Turner

2  Broadcasting System, Inc., 135 F.3d 658, 661 (9th Cir. 1998).  The Court may also consider

3  documents attached to the Complaint.  See Hal Roach Studios, Inc. v. Richard Feiner &

4  Co., 896 F.2d 1542, 1555 fn.19 (9th Cir. 1989).

5        Defendant Fidelity asks this Court to note that, as a matter of law, the SFIP is the

6  only policy of flood insurance available in communities participating in the NFIP, as in this

7  case.  See Garcia v. Omaha Prop. and Cas. Ins. Co., 933 F.Supp 1064, 1070 (S.D.Fla. 1995),

8  aff'd. 95 F.3d 58 (11th Cir. 1995).  As such, there can be no argument that Plaintiffs

9  received any other policy.   Further, the SFIP is published in its entirety at 44 C.F.R. Pt. 61,

10  App. A(1)[10].  As the SFIP is published as law within the Code of Federal Regulations, this

11  Court may take judicial notice of its provisions.

12        Attached to this memorandum as exhibits are two amicus curiae briefs filed by

13  FEMA through the U.S. Department of Justice.  One regards preemption and was

14  submitted in Van Holt v. Liberty Mutual Insurance Co., 163 F.3d 161 (3rd Cir. 1998)(on

15  rehearing).  See Exhibit 12.  The other concerns liability for interest and was submitted in

16  Newton v. Capital Assur. Co., Inc., 209 F.3d 1302 (11th Cir. 2000).  See Exhibit 13.  Both

17  briefs may be examined by this Court in the content of this motion under the rule of Mack

18  v. South Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir.1986), abrogated on other grounds,

19  Astoria Federal Sav. and Loan Ass'n v. Solimino, 501 U.S. 104 (1991).  Moreover, examples

20  of courts taking judicial notice of these briefs include, Scherz v. South Carolina Insurance

21  Co., 112 F.Supp.2d 1000 (C.D.Cal. 2000), and McCormick v. Travelers, 103 Cal.Rptr.2d

22  258, 266 (Cal. App. 1st. Cir. 2001), review denied.

23        As discussed below, it is Fidelity's position that, except for the breach of contract

24  action, all other causes of action and theories of recovery fail to state a claim upon which

25  relief may granted, including the claims for interest, punitive damages, consequential

26  damages, compensatory damages and the alleged breach of the duty of good faith and fair

27  dealing.  These claims are preempted and barred by federal Constitutional, statutory and

28

[10]  Attached as Exhibit 1.

DEF'S NTC & MEMO OF PTS. & AUTHS. IN SUPP.
OF MTN. TO DISMISS STATE LAW CLAIMS

1  regulatory law, and as such, federal law does not allow for the recovery of same.  Such

2  claims should be dismissed pursuant to F.R.Civ.P. Rule 12(b)(6).

3

4  IV.    LAW AND ARGUMENT

5        In the Plaintiffs' Complaint, Plaintiffs allege that Defendant breached the contract

6  of flood insurance during the adjustment of the Plaintiffs' flood loss claim.  Thus, Plaintiffs

7  claim they are entitled to state law based remedies such as (1) punitive damages, (2)

8  compensatory damages; (3) consequential damages, (4) damages for the breach of good

9  faith and fair dealing; (4) damages for emotional distress, and (5) interest.  However, based

10 on clearly established jurisprudence, Plaintiffs' state law based extra-contractual claims are

11 barred and preempted by federal Constitutional, regulatory, and statutory law.  Before

12 submitting its arguments with respect to preemption, Fidelity respectfully requests that this

13 Court review the history of the NFIP as found in Flick at 387-389 and Scherz at 1004.

14

15       A.    Law Governing Claims is Exclusively Federal

16       The front page of every SFIP expressly states that all flood insurance policies

17 provide flood insurance subject to the terms of the National Flood Insurance Act of 1968

18 ("NFIA"), 42 U.S.C. § 4001, et seq., and the regulations found in Title 44 of the Code of

19 Federal Regulations.  (The last section of each SFIP  - Article XI - repeats this same

20 requirement.)  Therefore, claimants are bound not only by the terms of the policy, but by

21 the terms of the statutes and applicable regulations.[11]  Further, construction or

22 interpretation of an insurance contract is purely a question of law for the court to decide.[12]

23 Moreover, in interpreting a flood insurance policy issued pursuant to the NFIP, the court

24

25

26 [11] Mussoline v. Morris, 692 F.Supp. 1306 (S.D. Fla. 1987).

27 [12] Sodowski v. National Flood Ins. Program, 834 F.2d 653 (7th Cir. 1987), cert. denied, 486
   U.S. 1043 (1988); Atlas Pallet Inc. v. Gallagher, 725 F.2d 131 (1st Cir. 1984); Smoak v.
28 Independent Fire Ins. Co., 874 F.Supp. 110 (D.S.C. 1994); Rockland Federal Credit Union
   v. Witt, 853 F.Supp. 14 (D.Mass. 1994).

DEF'S NTC & MEMO OF PTS. & AUTHS. IN SUPP.
OF MTN. TO DISMISS STATE LAW CLAIMS

1   must look to federal common law.[13]  Notably, the Plaintiffs are bound by this choice of law

2   provision as it is part of the contract–here the SFIP–they seek to enforce.  See 44 C.F.R. Pt.

3   61, App. A(1), Art.  XI.

4

5       1.      States Have <u>Never</u> Had Authority Over The NFIP

6           Under the NFIP, none of the States have ever had any regulatory control over <u>any</u> of

7   the Program's "operations," regardless of the approach to any possible claim.[14]  As a

8   foundational matter, the U.S. insurance industry is an operation of interstate commerce.

9   As such, its regulation is solely the province of the federal government. U.S. Const. Art. 1,

10  §8 Par. 3.  The <u>only</u> reason that the various States are allowed to operate insurance

11  regulatory commissions and pass insurance laws is because Congress has allowed them to

12  do so, and then agreed not to preempt state insurance law via the McCarran-Ferguson Act,

13  15 U.S.C. §1011, et seq.  That Act effectively tenders to the States the inherent <u>national</u>

14  power over regulation of the U.S. insurance industry.  <u>However</u>, Congress specifically and

15  expressly exempted from this tender all instances where the U.S. Congress enacts

16  legislation which "specifically relates to the business of insurance":

17      (b) Federal regulations

18      No Act of Congress shall be construed to invalidate, impair, or supersede any
        law enacted by any State for the purpose of regulating the business of
19      insurance, or which imposes a fee or tax upon such business, unless such Act
        specifically relates to the business of insurance .... (emphasis added).
20
        15 U.S.C. §1012(b)
21
22          The meaning and import of the quoted language was established by the U.S.

23  Supreme Court in Barnett Bank of Marion County v. Nelson, 517 U.S. 25 (1996).  In

24
    _____
25  [13] Leland v. Federal Insurance Administrator, 934 F.2d 524 (4th Cir. 1991); Wright v.
    Director, FEMA, 913 F.2d 1566 (11th Cir. 1990); Sodowski v. National Flood Ins. Program,
26  834 F.2d 653 (7th Cir. 1987), cert. denied, 486 U.S. 1043  (1988); U.S. v. Parish of St.
    Bernard, 756 F.2d 1116 (5th Cir. 1985), cert. denied, 474 U.S. 1070 (1985); Hanover
27  Building Materials, Inc. v. Guiffrida, 748 F.2d 1011 (5th Cir. 1984).

28  [14]  The States do not contest this.  Please see Jamal v. Travelers, 97 F.Supp.2d 800, 804-805
    (S.D. Tex 2000) in which the Texas Department of Insurance provided an affidavit which
    stated that it does not regulate matters involving the NFIP.

1    Barnett, the Supreme Court conducted an in-depth discussion of the McCarran-Ferguson

2    Act's "language and purpose" as well as the "circumstances surrounding" its enactment.

3    Id. at 37-38.  Within that analysis, the Supreme Court held that the language "specifically

4    relates to the business of insurance," found at 15 U.S.C. §1012(b), is to be interpreted

5    "broadly."  In this regard, the court explained:

6           Our conclusion rests upon the McCarran-Ferguson Act's language and
             purpose taken together.  Consider the language – "specifically relates to the
7           business of insurance."  In ordinary English, a statute that says that banks
             may act as insurance agents, and that the Comptroller of the Currency may
8           regulate their insurance-related activities "relates" to the insurance business.
             The word "relates" is highly general, and this Court has interpreted it broadly
9           in other preemption contexts.  Id. at 38.

10          The specific question of whether the McCarran-Ferguson Act precludes FEMA's

11   regulations from preempting state insurance regulation was directly addressed in Masoner

12   v. First Community Insurance Co., 81 F.Supp.2d 1052 (D.Idaho 2000).  In Masoner, the

13   court dispensed with the Plaintiff's argument against preemption as follows:

14          At the hearing, Plaintiffs' counsel argued for the first time that the
             McCarran-Ferguson Act, 15 U.S.C. §1011-1015, saves Plaintiffs' state law
15          claims from federal preemption.  However, this argument ignores §1012(b) of
             that Act, which provides as follows:
16
                    No Act of Congress shall be construed to invalidate, impair, or
17                  supersede any law enacted by any State for the purpose of
                    regulating the business of insurance, or which imposes a fee or
18                  tax upon such business, unless such Act specifically relates to
                    the business of insurance …
19
             15 U.S.C. §1012(b) (emphasis added).  In this case, through the enactment of
20          the National Flood Insurance Act, Congress has expressly authorized FEMA,
             an agency of the federal government, to regulate the business of flood
21          insurance, including the methods by which claims are adjusted and paid for
             any damage to or loss of property covered by a Standard Flood Insurance
22          Policy.  42 U.S.C. §4019.  Thus despite Plaintiffs' assertions to the contrary,
             the McCarran-Ferguson Act's savings clause does not preclude the
23          application of the provisions of the National Flood Insurance Act in this case.
             See Humana Inc. v. Forsyth 525 U.S. 299, 299, 119 S.Ct. 710, 716 142 L.Ed.2d
24          753 (1999) ("The McCarran-Ferguson Act … precludes application of a
             federal statute in the face of state law 'enacted … for the purpose of
25          regulating the business of insurance,' if the federal measure does not
             'specifically relat[e] to the business of insurance …' ").  Masoner, supra at
26          1057, n.3.

27          Based upon Barnett Bank and Masoner, the McCarran-Ferguson Act mandates that

28   the federal government can displace insurance state law based insurance regulations when

DEF'S NTC & MEMO OF PTS. & AUTHS. IN SUPP.
OF MTN. TO DISMISS STATE LAW CLAIMS

1   Congress directly enters the field, and further, that the McCarran-Ferguson Act establishes

2   that Congress expressly reserves the power, under the Supremacy Clause of the

3   Constitution, to have federal law govern the question where Congress enacts legislation

4   which "specifically relates to the business of insurance."  Beyond question, the National

5   Flood <u>Insurance</u> Act "specifically relates to the business of insurance."  State law is thus

6   displaced.

7
            2.     Policy Mandates are "Strictly Construed" Because of the
                   Constitution
8       Defendant Fidelity next respectfully asks this Court to focus upon the following

9
    specific provisions of our Constitution:
10
            Art. 1 §8 Par. 3:  To regulate commerce with foreign nations, and among the several
11          states, and with the Indian tribes;

12          Art. 1 §9 Par. 7: No money shall be drawn from the Treasury, but in
            consequence of appropriations made by law; and a regular statement and
13          account of the receipts and expenditures of all public money shall be
            published from time to time.
14
            Art. 6 Par. 2: This Constitution, and the laws of the United States which shall
15          be made in pursuance thereof; and all treaties made, or which shall be made,
            under the authority of the United States, shall be the supreme law of the
16          land; and the judges in every state shall be bound thereby, and anything in
            the Constitution or laws of any state to the contrary notwithstanding.
17
        In McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 4 L. Ed. 579 (1819), the Justices
18
    of the Supreme Court reviewed the just-quoted Constitutional provisions,  then Chief
19
    Justice John Marshall penned the following bedrock principle of our Republic:
20
            The Court has bestowed on this subject its most deliberate
21          consideration.  The result is a conviction that the states have no power, by
            taxation or otherwise, to retard, impede, burden, or in any manner control,
22          the operations of the Constitutional laws enacted by Congress to carry into
            execution the powers invested in the general government.  This is we think,
23          the unavoidable consequence of that supremacy which the Constitution has
            declared.  We are unanimously of opinion that the law passed by the
24          legislature of Maryland, imposing a tax on the bank of the United States is
            unconstitutional and void. (emphasis added)  Id. at 435.
25
        To allow the state law claims at issue in this matter to proceed, with all respect,
26
    would be to violate McCulloch.  Any such ruling would necessarily allow a state to regulate
27
    <u>and</u> burden <u>and</u> control "the operations of the Constitutional laws enacted by Congress."
28
    Id.  As per the U.S. Congress, <u>only</u> FEMA may make regulatory decisions regarding NFIP

DEF'S NTC & MEMO OF PTS. & AUTHS. IN SUPP.
OF MTN. TO DISMISS STATE LAW CLAIMS

1   claims (42 U.S.C. §4019), and <u>only</u> the federal courts may adjudicate those claims.  See 42

2   U.S.C. §4072.  The reason: U.S. Treasury funds are used <u>directly</u> to pay for <u>both</u> the claims

3   and the adjustment of the claims.  42 U.S.C. §4017(d).  Thus, as per Congress and the

4   Constitution, there is no role for the States in the U.S. Treasury-financed NFIP claims

5   adjustment.

6       In Gowland, at 954, the Fifth Circuit directly held that "the provisions of an

7   insurance policy issued pursuant to a federal program must be strictly construed and

8   enforced."  The Ninth Circuit held that "the conditions of an insurance policy offered

9   pursuant to a congressionally mandated program, such as the NFIP, must be strictly

10  observed."  See Wagner v. Director, FEMA, 847 F.2d 515, 518 (9th Cir. 1988); see also,

11  Flick, at 391-392 , discussing the Constitutional foundation of SFIP claims analysis.  The

12  reason <u>why</u> FEMA regulations and the Policy's provisions <u>must</u> be "strictly construed and

13  enforced," is Constitutional.  In this regard, please recall that all payments are a "direct

14  charge on the public treasury." Gowland, at 953.

15      It is requested that this Court also review the Supreme Court's decisions in Federal

16  Crop Ins. Corp. v. Merrill, 332 U.S. 380 (1947), and Office of Personnel Management v.

17  Richmond, 469 U.S. 414 (1990).  Courts have repeatedly held that these Supreme Court

18  precedents govern analysis of claims such as those raised at bar, when brought in the context

19  of the NFIP.[15]  While Fidelity clearly cannot quote the entirety of both decisions, the

20  following passages directly govern the current situation.  First, in Merrill, supra at 384-85, is

21  found the following:

22          If the Federal Crop Insurance Act had by explicit language prohibited
        the insurance of spring wheat which is reseeded on winter wheat acreage, the
23      ignorance of such a restriction, either by the respondents or the Corporation's
        agent, would be immaterial and recovery could not be had against the
24      Corporation for loss of such reseeded wheat.  Congress could hardly define
        the multitudinous details appropriate for the business of crop insurance
25      when the Government entered it.  Inevitably 'the terms and conditions' upon
        which valid governmental insurance can be had must be defined by the
26      agency acting for the Government.  And so Congress has legislated in this

27

28  _____

[15] Gowland, supra; Forman v. FEMA, 138 F.3d 543 (5th Cir. 1998); Flick, supra; Penny v.
Giuffrida, 897 F.2d 1543 (10th Cir. 1990); Wagner, supra; Phelps v. FEMA, 785 F.2d 13
(1st Cir. 1986).

_____

                                        DEF'S NTC & MEMO OF PTS. & AUTHS. IN SUPP.
                        -11-             OF MTN. TO DISMISS STATE LAW CLAIMS

instance, as in modern regulatory enactments it so often does by conferring the rule-making power upon the agency created for carrying out its policy.[16] See §1516(b), 52 Stat. 72, 77, 7 U.S.C.A. §1516(b).  Just as everyone is charged with the knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents.

Accordingly, the Wheat Crop Insurance Regulations were binding on all who sought to come within the Federal Crop Insurance Act, regardless of actual knowledge of what is in the Regulations or of the hardship resulting from innocent ignorance.  The oft-quoted observation in Rock Island, Arkansas & Louisiana R. Co. v. U.S., 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920), that 'Men must turn square corners when they deal with the Government,' does not reflect a callous outlook.  It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury.   (emphasis added).[17]

Second, Richmond, which explained the Constitutional underpinnings of the Merrill doctrine, includes these points:

We hold that payments of money from the Federal Treasury are limited to those authorized by statute, and we reverse the contrary holding of the Court of Appeals. Id. at 416.

*     *     *

Our cases underscore the straight forward and explicit command of the Appropriations Clause.  "It means simply that no money can be paid out of the Treasury unless is has been appropriated by an act of Congress." Id. at 424.

*     *     *

But the Clause has a more fundamental and comprehensive  purpose, of direct relevance to the case before us.  It is to assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of government agents or the individual pleas of litigants. Id. at 427-28..

*     *     *

Even if most claims were rejected in the end, the burden of defending such estoppel claims would itself be substantial. Id. at  433.

*     *     *

The rationale of the Appropriations Clause is that if individual hardships are to be remedied by payment of Government funds, it must be at the instance of Congress. Id. at 434.

---

[16] At bar, this tender of rule-making power is found at 42 U.S.C. §4019.  See West v. Harris, 573 F.2d 873 (5th Cir., 1978), cert. denied 440 U.S. 946 (1979), the first decision by any court of appeal involving the NFIP.

[17]  Given that such a duty binds this  Court, it certainly binds Fidelity.

DEF'S NTC & MEMO OF PTS. & AUTHS. IN SUPP. OF MTN. TO DISMISS STATE LAW CLAIMS

1    In light of Merrill and Richmond, the Court is asked to consider the following:  First,

2    Congress underwrites all operations of the NFIP through the U.S. Treasury.[18]  This includes

3    appropriations for both the payment of claims and the adjustment of those claims.  Id.

4    Similarly, Congress has conferred "rule-making power upon the agency created for carrying

5    out its policy," in this case, FEMA, specifically with regard to rules governing the adjustment

6    of claims.[19]  Also, Congress statutorily authorized FEMA to enter into "Arrangements" with

7    private insurance companies which operate with a federal checkbook as the "fiscal agent" of

8    the United States.[20]  Under the "Arrangement" established by FEMA with Congressional

9    authorization, all payments made under an NFIP claim are "binding" upon the Federal

10   Insurance Administration.[21]  This includes defense costs in ensuing litigation.[22]  Thus, it is

11   irrefutable that everything involved in this case is occurring pursuant to federal government

12   rules, and at federal government expense.  Fidelity makes no rules and has no risk

13   whatsoever.  All rule making and risk and expense is the province of the federal government.

14   FEMA's own position on these issues could not be more clear.  See the amicus curiae

15   brief the United States submitted in Van Holt, supra.  (Exhibit 11).  This Court is

16   respectfully asked to examine that amicus brief as it sets forth the longstanding position of

17   the agency charged by Congress with administering the NFIP.[23]  Among the many

18   important explanations found within that brief, are the following:

19   The United States has a significant interest in how operation of the program is
     dealt with in the courts, because the terms of the Standard Flood Insurance
20   Policy ("SFIP") are fixed by FEMA regulation on a nationwide basis; because
     Congress has vested FEMA with the authority to establish the way claims are

21   ─────────────────

22   [18] 42 U.S.C. §4017(d)(1).

23   [19] 42 U.S.C. §§4013, 4017, 4019; See also Merrill, supra, at 384-85, and West, supra.

24   [20] 42 U.S.C. §4071(a)(1).

25   [21] 44 C.F.R. §§62.23(i)(l) and (6), and Pt. 62, App. A, Art. II(F). And Art. III(C).

26   [22] 44 C.F.R. §§62.23(i)(6) and (9).

27   [23] Defendant respectfully suggests that FEMA's interpretation of its own regulation should
     be given "controlling weight" and "binding" upon the federal courts.  See Stinson v. United
28   States, 508 U.S. 36,113 S.Ct. 1913 (1993), and the several Supreme Court cases cited
     therein.

─────────────────

DEF'S NTC & MEMO OF PTS. & AUTHS. IN SUPP.
OF MTN. TO DISMISS STATE LAW CLAIMS

1    to be proved, adjusted, and paid; and because the claims investigation and
     adjustment process is and must be governed by uniform federal law.  The
2    United States thus has a compelling interest in assuring that State regulators
     and State courts do not – directly or indirectly, by construction of policies or
3    scrutinizing the investigation and adjustment of claims, or by threatening to
     do so –  undermine operation of this federal program.  (emphasis added) Id.
4    at p. 1.

5                                        *    *    *

6    A federal insurance program is not subject to State law. . .  There is no role in
     such cases for State regulators or State courts.  The essence of the complaint
7    here is based on execution of the federal insurance contract, and artful
     pleading cannot transmogrify this federal contract case into a State tort case.
     State law is preempted as a matter of law and contract.
8
            Congress provided for "exclusive" district court jurisdiction, yet the
9    decision here would allow State and State courts to regulate indirectly,
     through their consumer protection laws, the investigation and adjustment of
10   federal flood insurance clams under this federal program.  This could wreak
     havoc on the program and cost the Treasury millions of dollars.  Under the
11   Panel's reasoning, the 50 States would become co-administrators of the
     program along with FEMA, a result Congress plainly did not intend when it
12   enacted §4019 vesting such administrative power in FEMA, and when it
     specifically amended §4072 to make federal jurisdiction exclusive.  (emphasis
13   added)  Id. at pp 8-9.

14                                       *    *    *

15   When plaintiffs had a complaint about purported delay in processing their
     claim, they went not to FEMA, as they should have, see 44 C.F.R. 61.14(b),
16   but to State insurance regulators (Op., at 1a-2a).  Allowing State regulators to
     breathe down the necks of the WYO companies, as happened here, would
17   make the 50 States co-administrators of the program along with FEMA, a
     result Congress plainly did not intend.  It would also deprive the program of
18   the national uniformity Congress did intend, and make a hodgepodge of the
     program, undermining the federal mission. (emphasis added) Id. at p. 13.
19                                       *    *    *

20          D.  Yet another reason exists why State law cannot apply: About 10%
     of the flood policies are written directly by FEMA, and it is essential to the
21   public fisc and to the program's uniformity that FEMA-written policies be
     administered in exactly the same way.  FEMA could not be sued in State
22   court or subjected to State regulators, and it is necessary that WYO
     companies enjoy the same protection.

23          In sum, plaintiffs cannot forego their right to sue under the insurance
     policy and seek relief under State law, for that would undermine the federal
24   program.  Therefore, a claim that can be raised in federal court under the
     policy must be raised in federal court under the policy, because State
25   remedies are preempted.  (emphasis added)  Id. at pp 14-15.

26          With respect, it is prayed that this Court will defer to FEMA on these issues (and to

27   the great majority of courts which have agreed with FEMA) given that the question at bar

28   goes to the core of FEMA's ability to carry out its mission for Congress.

DEF'S NTC & MEMO OF PTS. & AUTHS. IN SUPP.
                                          OF MTN. TO DISMISS STATE LAW CLAIMS

1

2          B.    Traditional Preemption Analysis

3          The jurisprudential doctrine of preemption is examined in three ways:  First, the

4  Court considers whether there is "express preemption," whereby Congress or federal

5  regulation expressly preempts a given field.  Second, there can be "field preemption,"

6  wherein federal regulation of the field is so pervasive, so as to displace and preempt state

7  law.  Third, is "conflict preemption," where application of state regulation would constitute

8  an impediment to Congressional intent.  Defendant's memorandum will only address

9  express and conflict preemption.

10

11          1.    Express Preemption

12          The language in Article XI represents a form of express preemption by unequivocally

13  stating that the SFIP is governed by federal statutory and regulatory law.[24]

14          In addition, the following express provisions of the National Flood Insurance Act

15  bolster the view that Article IX of the SFIP should be deemed an express preemption

16  provision: to wit, in 42 U.S.C. §4072, the Congress specifically precluded state court

17  jurisdiction over NFIP claims.[25]  As per FEMA and the Third Circuit in Van Holt, this

18  would include extra contractual claims disputes.  Thus, a critically important question which

19  arises is this: How could it be said that the laws of the various States properly govern NFIP

20  claims handling decisions, when the courts of those States cannot entertain such claims?

21  Because Congress expressly legislated to defeat state court jurisdiction over the NFIA, and

22  because Congress expressly tendered all rule making authority to FEMA[26] (and not to

23  FEMA and the various States' insurance commissioners), all NFIA jurisdictional and rule

24

25  [24]  This has now been even more clarified.  This point is explained in the express
   preemption section of Judge Matz's ruling in Scherz at 1004-05.   Two other courts have
26  also held that there is an express preemption provision in Article IX of the SFIP.  See
   Exhibits 6 and 7 (the Brown and Hayes rulings).

27
   [25] Van Holt, supra; and  Flick, supra, at FN4.
28
   [26] 42 U.S.C. §§4013, 4017 and 4019.

DEF'S NTC & MEMO OF PTS. & AUTHS. IN SUPP.
OF MTN. TO DISMISS STATE LAW CLAIMS

1  making statutes plainly express an intent by Congress that <u>all</u> control over the NFIP remain

2  exclusively within the Executive and Judicial branches of the federal government. See also

3  42 U.S.C. §4019. where Congress expressly placed all rule making authority in the <u>Federal</u>

4  <u>Insurance Administrator</u>, and not in that Administrator <u>and</u> the 50 State insurance

5  commissioners.  As explained in Friedman v. South Carolina Ins. Co., 855 F.Supp. 348

6  (M.D.Fla.1994), federal law preempts the field and state law remedies such  as those sought

7  by the Plaintiffs is not available.[27]  In West, the Fifth Circuit noted the following about this

8  "child of Congress" and its applicable regulations:

9        Congress has undertaken to regulate the claims adjustment process and
       judicial review thereof, and nowhere in these statutory sections or in the
10       regulations implementing them, 24 C.F.R. §1912.21, 1912.22 (1977), is there
       any mention of use of the statutory law of the forum state on any issue.  West,
11       supra at 880.

12  The Ninth Circuit in Flick quoted from the same section of West from which the above-

13  quoted passage was taken. Flick, at 390.  The Congressional findings enunciated in 42

14  U.S.C. §§4001 and 4002 make clear that by enacting the NFIP, Congress preempted the

15  application of state law to flood insurance to protect the public fisc:

16        [T]he principal purpose in enacting the Program was to reduce, by
       implementation of adequate land use controls and flood insurance, the
17       massive burden on the federal fisc of the ever-increasing federal flood disaster
       assistance.  Till v. Unifirst Fed. Savings & Loan Association, 653 F.2d 152, 159
18       (5th Cir. 1981).

19  In West, at 881, the Fifth Circuit noted the following about the application of state law as to

20  Plaintiff's claims for penalties and attorney's fees as allowed by the laws of the State of

21  Louisiana:

22        Since the flood insurance program is a child of Congress, conceived to
       achieve policies which are national in scope, and since the federal government
23       participates extensively in the program both in a supervisory capacity and
       financially, it is clear that the interest in uniformity of decision present in this
24       case mandates the application of federal law. Cf. First National Bank,
       Henrietta v. Small Business Administration, 429 F.2d 280 (5th Cir. 1970).
25       Thus, a prevailing plaintiff in a suit on a flood insurance policy issued
       pursuant to the National Flood Insurance Act is not entitled to recover the
26

27  ───────────────
   [27]  See also Texas Landowners Rights Assoc. v. Harris, 453 F. Supp. 1025, 1030 (D.C.
28  1978), aff'd, 598 F.2d 311 (D.C. Cir. 1979), cert. denied, 444 U.S. 927 (1979) where the
   court explained that the NFIA is a "carrot and a stick" federal program.

DEF'S NTC & MEMO OF PTS. & AUTHS. IN SUPP.
                    OF MTN. TO DISMISS STATE LAW CLAIMS

1  statutory penalty and attorney's fees allowed by state insurance law for
   arbitrary denial of coverage.

2

3              2.      Conflict Preemption

4       It is within this test that the need for preemption becomes most apparent.  It is on the

5  basis of conflict preemption that the Scherz Court held that extra-contractual state law

6  causes of action related to the handling of claims under the NFIA are preempted by federal

7  law.  See Scherz v. South Carolina Insurance Co., 112 F.Supp.2d 1000, 1007-1010 (C.D.Cal.

8  2000); see also Judge Collins' discussion in Pecarovich, supra explaining that Scherz is

9  controlling.   The Court is asked to consider (1) the profit-based motives of insurance

10 companies which the various States' bad faith claims handling statutes are designed to

11 regulate, and (2) the stark differences between how normal insurance claims are analyzed

12 and how SFIP claims are analyzed.  With regard to these two points, please note the

13 following:  in normal private lines of insurance, if an insurer does not pay a claim, it

14 obviously makes a profit thereby in the form of retained earnings.  The making of such a

15 profit, where inappropriate, is exactly the situation which the various States' bad faith claims

16 statutes seek to regulate.  However, in the context of the NFIA, WYO Program carriers

17 have no risk whatsoever, and act merely as the "fiduciary" and/or "fiscal agent" of the

18 United States.  See 42 U.S.C. §4071(a)(1) and 44 C.F.R. §62.23(f).  Notably, the entire

19 "Arrangement" between FEMA and the WYO Program carriers may be found in its entirety

20 at 44 C.F.R. Pt. 62 App. A.

21      That "Arrangement" specifically delineates that WYO Program carriers are paid a

22 3.3% commission on all claims payments, and, that all claims payments are "binding" upon

23 the Federal Insurance Administrator.[28]  Accordingly, and has been uniformly held by the

24 courts, the WYO carrier makes its profit by paying a claim, not by denying it.  As was

25 recognized by the Ninth Circuit in Flick, supra at 392:

26          Under the NFIP regulations, WYO insurers also pay claims out of the
            National Flood Insurance Fund.  The federal government is a guarantor and
27          assumes full liability for flood insurance policies that are issued by WYO

28
   ──────────────────────
   [28]  44 C.F.R. §§62.23(i)(1) and (6), and App. A, Art. II(F) and Art. III(C) and (D).

DEF'S NTC & MEMO OF PTS. & AUTHS. IN SUPP.
                                                       OF MTN. TO DISMISS STATE LAW CLAIMS

insurers.  See 44 C.F.R. §62.23(f);  64 Fed. Reg. 27705, 27708 (1999)(stating that WYO insurers "do not have to pay for reinsurance for their flood business since the federal government assumes the liability for flood losses.").

In short, if the various States' claims handling statutes designed to prevent inappropriate profits are imposed upon FEMA's WYO Program carriers, which make their profit by paying claims, then such a result will impede FEMA's ability to cause WYO carriers to only make that profit which is properly attainable through strict enforcement of FIA regulations. Scherz at 1008.

C.    Types of Extra-Contractual Claims Rejected by Courts

1.    Breach of the Duty of Good Faith and Fair Dealing.

The WYO carrier is the "fiduciary" of the government, not of the insured.  44 C.F.R. Pt. 62.23(f).  At the heart of the "good faith" doctrine the Plaintiff is advancing is the "special relationship" between insurer and insured, normally viewed as fiduciary in nature. At bar, Fidelity's fiduciary responsibilities run in the opposite direction.  Id.   It is undisputed that Plaintiffs cannot pursue anything other than a Breach of Contract claim against FEMA, if the Plaintiffs' SFIP was issued directly by and through FEMA as opposed to its fiscal agent (Fidelity).  However, FEMA has repeatedly stressed that there should be no special rules based upon whether or not it is a FEMA issued SFIP, or a WYO Carrier issued SFIP.  As noted in Scherz:

It is undisputed that if FEMA had issued the SFIP directly to Scherz, his sole remedy for any alleged claims mishandling would be a cause of action for breach of contract.  To permit Scherz to recover for tortious breach of the implied covenant of good faith and fair dealing against the WYO insurer for alleged claims mishandling would create an internal inconsistency within an otherwise balanced statutory and regulatory structure.

Scherz v. South Carolina Insurance Co., 112 F.Supp.2d 1000, 1009 (C.D.Cal. 2000)

*    *    *    *

The Ninth Circuit's concern that WYOs not be subjected to "special rules" counsels in favor of finding conflict preemption here, for to allow an insured to bring a state law tort claim for breach of the implied covenant of good faith and fair dealing against a WYO insurer but not against FEMA would amount to a special rule benefitting only some insureds. [FN10]

-18-

1    FN10. Moreover, for courts to entertain state-based causes of action involving claims
     handling could require application of fifty different state laws, which would also
2    frustrate the congressional goal of creating a uniform system for flood insurance.

3    Scherz at 1009.

4        Furthermore, as noted by the Court in Scherz,, dismissal of the tort claims for

5    breach of a duty of good faith and fair dealing would not frustrate the purposes of the NFIP,

6    and allowing such claims makes little sense given the profit-based incentives of a WYO

7    Carrier in the payment of a claim.  See Scherz v. South Carolina Insurance Co., 112

8    F.Supp.2d 1000 (C.D.Cal. 2000)

9

10            2.    Emotional Distress Claims

11       Emotional distress claims represent another state law based claim that has been

12   precluded under NFIP case law.  For instance the courts in Novikov vs.  Allstate 2001 WL

13   880852 (E.D. Cal.  2001), Mason v.  Witt 74 F.Supp.2d 955 (E.D. Cal.  1999) and Miller v.

14   Omaha Property & Cas. Ins. Co. 1997 WL 33833419,   (S.D.Tex.,1997) all dismissed claims

15   for emotional distress from claims brought in relation to a Standard Flood Insurance

16   Property.  As explained in Miller:

17       Another reason exists for denying the Millers' claims for state law based
         punitive damages and damages for mental anguish. Damages recoverable
18       under the NFIA are "pecuniary in nature, not personal, and the amount is
         based upon the readily ascertainable value of services and property." West,
19       573 F.2d at 883. Punitive damages and damages for emotional distress clearly
         are personal, rather than pecuniary, in nature.
20

21    Miller ,  1997 WL 33833419 at *4

22            3.    Punitive Damages of Any Type Are Not Recoverable Under The Act

23       There is no authorization within the statutes or the regulations of the NFIA (42

24   U.S.C. § 4001, et seq.) or the controlling sections of Title 44 of the Code of Federal

25   Regulations (44 C.F.R. Part 59, et seq.) which allow the recovery of any form of punitive

26   damages, or which allows recovery of punitive damages under state law.  See Scherz v. South

27   Carolina Insurance Co., 112 F.Supp.2d 1000 (C.D.Cal. 2000);  Pecarovich, supra at 989-990;

28   Eddins, at 753.  Punitive damages punish a defendant who has acted willfully or in gross

DEF'S NTC & MEMO OF PTS. & AUTHS. IN SUPP.
OF MTN. TO DISMISS STATE LAW CLAIMS

1    disregard of a plaintiff's rights.  Punitive damages are designed to teach the wrongdoer and

2    deter others from acting similarly.  Id.; see also, Prosser, The Law of Torts §2 (1971).

3    According to the Eddins:

> 4    The threat of punitive damages deters insurance companies, who would be
>      otherwise unjustly enriched, from arbitrarily denying claims that rightfully
> 5    should be paid.  A private insurer does not have a pecuniary incentive to
>      deny a claim under a policy issued through the National Flood Insurance
> 6    Act.  Any claim would be paid by the Federal Government ...[Therefore]
>      allowing punitive damages to be recoverable under the [NFIA] would simply
> 7    defeat the philosophy behind the program.  (emphasis added).

8    Eddins at 754.

9         Therefore, allowing punitive damages to be imposed upon Defendant Fidelity would

10   be contrary to the NFIA and defeat the philosophy behind the NFIP.  See 3608 Sounds

11   Avenue.  Fidelity therefore asks that the claims for exemplary damages and special damages

12   be dismissed.

13

14              4.    Interest is Not Recoverable.

15        The very first decision to discuss the appropriateness of interest on flood claims,

16   whether pre-judgment or post-judgment, was West, supra.  In West, the Fifth Circuit ruled

17   that prejudgement interests must be awarded to a prevailing plaintiff in a case under the

18   NFIA.  However, the West decision was decided when the NFIP was operated under "Part

19   A" of the Act, 42 U.S.C. §§ 4051-4056, which authorized an incorporated underwriting pool

20   of private insurance companies to form the National Flood Insurance Association.  The

21   West court, in reviewing Part A of the Act, held that despite the federal government's

22   financial stake in the program, the Association was not "cloak[ed] . . . with the robe of

23   sovereign immunity from awards of any interest."  West, 573 F.2d at 882.  As such, in West,

24   the Fifth Circuit held that, since the private insurers who issued NFIP polices at that time

25   were not protected by the government's sovereign immunity, fair compensation to the

26   prevailing plaintiff could only be achieved by awarding prejudgment interest on those

27   polices issued under Part A of the Act.  573 F.2d at 883.

28

DEF'S NTC & MEMO OF PTS. & AUTHS. IN SUPP.
OF MTN. TO DISMISS STATE LAW CLAIMS

1    All of this changed when the Program was moved into "Part B."   The result of this

2    move was that the Secretary of HUD took control of all operational responsibilities of the

3    Program in 1976 and then FEMA took over in 1978.  As a result of this important change of

4    control, both the Fifth Circuit and Tenth Circuit have determined that interest cannot be

5    awarded in claims under Part B of the program. In re Estate of Lee v. NFIP, 812 F.2d 253,

6    255 (5th Cir. 1987); Sandia Oil Co., Inc. v. Beckton, 889 F.2d 258, 263 (10th Cir. 1989).  In this

7    vein, the Fifth Circuit in Estate of Lee noted that <u>although it was appropriate to award</u>

8    <u>interest on flood insurance policies issued by the private insurers under Part A of the Act,</u>

9    <u>such an award, which would now be a direct charge on the public treasury, is no longer</u>

10   <u>possible without express congressional consent</u>.  In re Estate of Lee, 812 F.2d at 256.

11   The U.S. Eleventh Circuit, in Newton v. Capital Assurance Corp., 245 F.3d 1306

12   (11th Cir., 2001), held that awards of interest were barred by the "no-interest rule" because,

13   at bottom, it was U.S. Treasury funds at stake regardless of whether FEMA or a Write Your

14   Own Carrier was the defendant.  The Eleventh Circuit noted the following in Newton, supra

15   at 1312:

16   > But the reality lying behind these observations robs them of their strength.  A
   > WYO company may write a policy in its name, but FEMA dictates the terms.
17   > And preliminary responsibility is a mirage when the federal government,
   > through FEMA, will always foot the full bill in the end.  Giving these factors
18   > controlling weight would elevate the form of the insurance system over its
   > substance.  We thus conclude that prejudgment interest awards against WYO
19   > companies are direct charges on the public treasury forbidden by the no-
   > interest rule and reverse the part of the judgment awarding such interest.[29]

20

21   ####    5.    Consequential Damages Are Excluded.

22   Succinctly stated, Article V(A) of the Standard Flood Insurance Policies excludes the

23   damages resulting from loss of use of the property, loss of access to the property, lost

24   revenue or profits, loss from interruption of business or production, and "any other

25   economic loss" suffered by the insured.  At least two courts have held that such claims are

26   not recoverable.  See Messa, supra and Estate of Lee, supra.

27

28   ----

[29] Attached as Exhibit 12.

DEF'S NTC & MEMO OF PTS. & AUTHS. IN SUPP.
OF MTN. TO DISMISS STATE LAW CLAIMS

1  V.    CONCLUSION

2      Based on the arguments herein, Defendant contends that under clearly established

3  jurisprudence, Plaintiffs' state law based claims are preempted and barred by federal law,

4  and federal law does not allow for recovery of those items of damages made subject of this

5  Motion.  Accordingly, Defendants submit this Rule 12(b)(6) Motion to Dismiss all claims of

6  the Plaintiffs, other than the breach of contract claim.

7      WHEREFORE, Defendant, Fidelity National Property and Casualty Insurance

8  Company, respectfully requests that the Court issue an Order dismissing all of the Plaintiffs'

9  extra-contractual claims for damages as stated in the Plaintiffs' Complaint, leaving only the

10  remaining breach of contract claim to proceed.

11  Dated this19th day of May, 2008.

Respectfully submitted,

_____
Gary R. Gleason (SB#136167)
FARBSTEIN & BLACKMAN
411 Borel Avenue, Suite 425
San Mateo, California 94402-3518
P: 650-554-6200; F: 650-554-6240
Local Counsel for Defendant
FIDELITY NATIONAL PROPERTY AND
CASUALTY INSURANCE COMPANY

DEF'S NTC & MEMO OF PTS. & AUTHS. IN SUPP.
OF MTN. TO DISMISS STATE LAW CLAIMS