# EXHIBIT 4

_____

DEFENDANT'S MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS STATE LAW CLAIMS

SHUWAYHAT v. FIDELITY
CASE NO. C-07-05351 MHP

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

272 F.Supp.2d 981
(Cite as: 272 F.Supp.2d 981)
<KeyCite History>
United States District Court,
C.D. California.

Richard PECAROVICH Plaintiff,
v.
ALLSTATE INSURANCE COMPANY, Defendant.

No. CV 99-2129 ABC(MANx).

July 14, 2003.

Insured brought suit against write-your-own (WYO) flood insurer, alleging, inter alia, state law claims for breach of contract and bad faith in failing to pay flood insurance claim under Standard Flood Insurance Policy (SFIP). After initial dismissal of certain claims was reversed and case was remanded by the Court of Appeals, 309 F.3d 652, insurer moved for judgment on pleadings and for summary judgment. The District Court, Collins, J., held that: (1) bad faith claim was conflict preempted under National Flood Insurance Act (NFIA), and (2) related claims for punitive damages and interest were also preempted; and (3) policy manual limited WYO insurer's power to waive proof of loss requirements to claims of less than $7,500.

Motions granted.

West Headnotes

[1] States k18.7
360k18.7

Under the doctrine of express preemption, a given field may be explicitly preempted by a federal statute or regulation.

[2] Insurance k1110
217k1110

[2] States k18.41
360k18.41

Inclusion of provision expressly preempting state law claims dealing with claims handling as part of amendments made to National Flood Insurance Policy in October of 2000 did not have preemptive effect on claims against write-your-own (WYO) insurers filed prior to that date. Housing and Urban Development Act of 1968, § 1302, 42 U.S.C.A. § 4072; 44 C.F.R. Part 61, App. A(1) Art. IX.

[3] States k18.7
360k18.7

Under the field preemption doctrine, federal regulation of a given field may be so pervasive that it displaces and

preempts state law.

[4] Insurance k1110
217k1110

[4] States k18.41
360k18.41

State law bad faith claim against write-your-own (WYO) flood insurer was not barred under doctrine of field preemption; regulation promulgated under National Flood Insurance Act (NFIA) which addressed determination of whether claim is "outside the scope" of WYO insurer arrangement with Federal Emergency Management Agency (FEMA) was inconsistent with Congressional intent to preempt the field. Housing and Urban Development Act of 1968, § 1312, 42 U.S.C.A. § 4019; 44 C.F.R. Part 62, App. A. Art. III, subd. D, par. 4.

[5] States k18.5
360k18.5

The doctrine of conflict preemption applies where either (1) it is impossible for a private party to comply with both state and federal requirements or (2) where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

[6] Insurance k1110
217k1110

[6] States k18.41
360k18.41

Absence from National Flood Insurance Act (NFIA) of cause of action for bad faith claims handling against write-your-own (WYO) insurer did not preclude conflict preemption of state law bad faith claim, particularly where remedy was available under NFIA in form of requesting that Federal Emergency Management Agency (FEMA) waive its rules and limitations on claims to allow payment.

[7] Insurance k3142
217k3142

Under federal law, an insured must comply strictly with the terms and conditions of a federal insurance policy, including 60-day proof of loss requirement in Standard Flood Insurance Policy (SFIP). Housing and Urban Development Act of 1968, § 1312, 42 U.S.C.A. § 4019.

[8] Insurance k3164
217k3164

Under California law, an insurer may not deny a claim based on a defective notice or proof of loss if an insurer has substantially complied with those conditions.

[9] Insurance k1110
217k1110

[9] States k18.41
360k18.41

Conflict preemption barred state law bad faith claim arising from write-your- own (WYO) insurer's alleged mishandling of flood claim under Standard Flood Insurance Policy (SFIP); conflict between state substantial compliance standard and federal strict compliance requirements for proofs of loss made it impossible for WYO insurer to comply with both standards, and risk that insurers would err on side of overpaying claims to avoid potential state bad faith liability would frustrate Congressional intent to pay only meritorious claims and to allow insurers to profit only when in strict compliance with regulations.

[10] Insurance k1110
217k1110

[10] States k18.41
360k18.41

Insured's prayers for punitive damages and interest against write-your-own (WYO) insurer under Standard Flood Insurance Policy (SFIP) were preempted where state law bad faith claim on which they rested was conflict preempted by National Flood Insurance Act (NFIA).

[11] Federal Courts k950
170Bk950

Law of case doctrine did not preclude district court from deciding whether proof of loss requirement in Standard Flood Insurance Policy (SFIP) could be waived only for claims of less than $7,500, where Court of Appeals expressed no intention to preclude district court from interpreting proof of loss provisions on remand from reversal of dismissal of claims on other grounds.

[12] Federal Courts k950
170Bk950

Under the law of the case doctrine, a court may not decide issues already decided either "expressly or by necessary implication" on appeal.

[13] Insurance k3190
217k3190

Limitation upon waiver of proof of loss requirements set forth in policy manuals controlled provision of Standard Flood Insurance Policy (SFIP) allowing write-your-own

(WYO) insurers to waive requirements "in certain circumstances", and thus requirements could only be waived for claims of less than $7,500; governing regulations required insurers to be guided by policy manuals, and Federal Emergency Management Agency's (FEMA's) interpretation was entitled to deference. 44 C.F.R. 62.23(i)(1); 44 C.F.R. Part 62, App. A, Art. II, subd. A, par. 2.

[14] Insurance k3360
217k3360

Under California law, genuine dispute over whether flood claim was excluded from Standard Flood Insurance Policy (SFIP) by earth movement and land subsidence exclusions precluded, as a matter of law, any bad faith claim not preempted by National Flood Insurance Act (NFIA) that write-your-own (WYO) insurer mishandled flood insurance claim.

**983 Paul S Sigelman, Deborah K Perlman, Sigelman & Perlman, Beverly Hills, CA, for Richard Pecarovich, plaintiff.

Peter H Klee, Seth M Friedman, Luce Forward Hamilton & Scripps, San Diego, CA, Gerald J Nielsen, Nielsen Law Firm, Metairie, LA, for Allstate Insurance Co, defendant.

ORDER RE: DEFENDANT'S (1) MOTION FOR
JUDGMENT ON THE PLEADINGS and (2)
MOTION
FOR SUMMARY JUDGMENT

COLLINS, District Judge.

AllState Insurance Company's ("Defendant's") motions for judgment on the pleadings and for summary judgment came on regularly for hearing on July 14, 2003. After considering the materials submitted by the parties, argument of counsel and the case file, the Court hereby GRANTS Defendant's Motion for Judgment on the Pleadings and GRANTS Defendant's Motion for Summary Judgment.

I. FACTUAL AND PROCEDURAL BACKGROUND

Richard Pecarovich ("Plaintiff") brought suit on a Standard Flood Insurance Policy ("SFIP") issued by Defendant pursuant to the National Flood Insurance Act (the "NFIA"). (See Pl.'s Stmnt. in Resp. to **984 Def.'s Stmnt. of Uncontr. Facts ("Facts"), ¶ I.) The SFIP was in effect from August 21, 1997 to August 21, 1998 and covered Plaintiff's home, located at 1323 Morningside Drive in Laguna Beach, California ("the Property"). (Id. ¶¶ 2, 3.) As a result of damage the Property sustained, Plaintiff submitted a claim to Allstate under the SFIP for over $200,000. (Id. ¶ 5.)

The parties are in dispute over Plaintiff's compliance with the SFIP's proof of loss requirements. [FN1] (Id. ¶ 6.) Defendant asserts that Plaintiff never submitted a proof of

loss in connection with his claim, in violation of the SFIP's requirement that an insured submit a sworn proof of loss within 60 days of the loss. (Def.'s Stmnt. of Uncontr. Facts ¶ 6.) Plaintiff contends that the SFIP allows Defendant to waive the requirement for completion and filing of a proof of loss, and that an adjuster's report of the loss could be accepted instead. (Facts ¶ 6.) According to Plaintiff, the adjuster's report was never completed because Defendant failed to pay for engineering needed for its completion. (Id.)

> FN1. The parties also dispute the cause of the damage to the Property. (Facts ¶ 4.) That dispute is not relevant to the disposition of the instant motions.

On February 25, 1999, Plaintiff filed a Complaint against Defendant, alleging causes of action for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) actual and constructive fraud; and (4) negligence. [FN2] On November 24, 1999, the Court dismissed Plaintiff's negligence claim. On January 24, 2000, the Court dismissed Plaintiff's bad faith and fraud claims and found that Plaintiff's claim for monies due for breach of contract was moot. Plaintiff filed a notice of appeal to the Ninth Circuit on February 24, 2000. The case was reversed and remanded to this Court on February 24, 2003. In its decision, the Ninth Circuit held that (1) the exclusion for flooding affecting only Plaintiff's property and not the surrounding neighborhood did not apply, (2) the "land movement" exclusion could not bar coverage if loss was within the limited coverage for "land subsidence," (3) Defendant had the authority to grant an exception from the proof of loss requirement and (4) an issue of fact existed as to whether Plaintiff ever properly submitted his claim.

> FN2. Defendant indicates in its motion for judgment on the pleadings that Plaintiff's fraud claim was abandoned on appeal. In his opposition to Defendant's motion for summary judgment, Plaintiff argues that none of his claims were abandoned because of the Ninth Circuit's reversal and remand and this Court's grant of summary judgment. However, the dismissal of Plaintiff's negligence claim was not affected by the Ninth Circuit's decision. Furthermore, it is apparent from the Ninth Circuit's decision that Plaintiff did not raise the issue of the dismissal of his fraud claim upon appeal and the case was not remanded for determination of that issue. The Court agrees with Defendant that Plaintiff abandoned the fraud claim on appeal.

On May 24, 2003, Defendant filed the instant motions for judgment on the pleadings and for summary judgment. Plaintiff filed oppositions on June 18, 2003 and on June 30, Defendant filed its replies.

## II. LEGAL STANDARD
### A. Motion for Judgment on the Pleadings

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). For purposes of such a motion, "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir.1989) (citing *Doleman v. Meiji* *985 *Mutual Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir.1984); *Austad v. United States*, 386 F.2d 147, 149 (9th Cir.1967)). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Id.* (citing *Doleman*, 727 F.2d at 1482). "However, judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment. *Id.* (citations omitted).

### B. Motion for Summary Judgment

The party moving for summary judgment has the initial burden of establishing that there is "no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *see British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978); *Fremont Indemnity Co. v. California Nat'l Physician's Insurance Co.*, 954 F.Supp. 1399, 1402 (C.D.Cal.1997).

If the moving party has the burden of proof at trial (*e.g.*, a plaintiff on a claim for relief, or a defendant on an affirmative defense), the moving party must make a "showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986) (quoting from Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). Thus, if the moving party has the burden of proof at trial, that party "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986) (emphasis in original); *see Calderone*, 799 F.2d at 259. On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

Once the moving party satisfies this initial burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading ... [T]he adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Pro. 56(e) (emphasis added). A "genuine issue" of material fact exists

only when the nonmoving party makes a sufficient showing to establish the essential elements to that party's case, and on which that party would bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a reasonable jury could reasonably find for plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in favor of the nonmovant. *Id.* at 248, 106 S.Ct. 2505. However, the Court must view the evidence presented "through the prism of the substantive evidentiary burden." *Id.* at 252, 106 S.Ct. 2505.

### III. DISCUSSION
#### A. Defendant's Motion for Judgment on the Pleadings.

Defendant moves for judgment on the pleadings that Plaintiff's bad faith claim is preempted by federal law, as are Plaintiff's prayers for punitive damages and interest. Defendant's argument relies heavily upon *Scherz v. South Carolina Insurance Company*, 112 F.Supp.2d 1000 (C.D.Cal.2000). Plaintiff opposes the motion, arguing that *986 his claims are not preempted for the reasons set forth in *Davis v. Travelers Property and Casualty Co.*, 96 F.Supp.2d 995 (N.D.Cal.2000).

#### 1. *The National Flood Insurance Act.*

In 1968, Congress passed the National Flood Insurance Act (the "NFIA") in order to guarantee that those who need affordable flood insurance can obtain it. The NFIA established the National Flood Insurance Program (the "NFIP"), which provides flood insurance in areas which have the greatest need. The NFIP is run by the Federal Emergency Management Agency ("FEMA"). Because FEMA lacks sufficient resources to administer the NFIP on its own, the Write Your Own ("WYO") program was created to allow private insurers to serve as fiscal agents of the United States and to issue federal flood policies. All flood claims are paid from the United States Treasury, regardless of whether the policy is issued by FEMA or by a WYO insurer. 44 C.F.R., Pt. 62, App. A Art. III(D)(1). The terms of the Standard Flood Insurance Policy ("SFIP") and the procedures for paying and handling claims are dictated by federal regulation to ensure consistency across the country. Under the WYO program, WYO insurers receive a 3.3% commission only if they approve a claim and authorize payment. 44 C.F.R., Pt. 62, App. A. Art. III(C)(1).

#### 2. *Plaintiff's State Law Claims Are Preempted by Federal Law.*

Defendant contends that it is entitled to judgment on the pleadings because Plaintiff's state law claim is preempted, because (1) every SFIP expressly states that flood insurance

is provided subject to the terms of the NFIA and the regulations promulgated thereunder and (2) under *Wagner v. Director, FEMA*, "the conditions of an insurance policy offered pursuant to a congressionally mandated program, such as the NFIP, must be strictly observed." 847 F.2d 515, 518 (9th Cir.1988). According to Defendant, the issue before the Court is whether state law claims relating to the manner in which an insurer handles a claim for federal treasury monies are preempted. In Defendant's estimate, express preemption, field preemption and conflict preemption all apply to Plaintiff's bad faith claim.

#### a. *Express Preemption.*

[1] Under the doctrine of express preemption, a given field may be explicitly preempted by a federal statute or regulation. *See English v. General Elec. Co.*, 496 U.S. 72, 78-79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). Since October of 2000, every SFIP has included a provision explicitly stating that the "policy and all disputes arising from the handling of the claim under the policy are governed exclusively by [federal law]." *See* 44 C.F.R. Pt. 61, App. A(1) Art. IX (2002). Defendant argues that the absence of this language prior to October of 2000 is not determinative, citing *Barnett Bank of Marion County v. Nelson*, 517 U.S. 25, 31, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996)(even when explicit preemption language does not appear, non-specific statutory language or the statute's structure and purpose may reveal a clear preemptive intent).

[2] Since the inception of the NFIA, federal courts have had original, exclusive jurisdiction for actions based on SFIP claims. 42 U.S.C. § 4072. According to Defendant, the Ninth Circuit has made abundantly clear that the changes made to the SFIP in October of 2000 were not substantive and instead merely clarified existing law. *See Pecarovich v. Allstate Ins. Co.*, 309 F.3d 652, 657 n. 7 (9th Cir.2002). Thus, in Defendant's estimate, the claims-handling issues raised by Plaintiff were expressly preempted when raised and continue *987 to be preempted after the October 2000 amendments to the NFIA.

The Court disagrees. As discussed in *Scherz*, at the time Plaintiff's complaint was filed, the NFIA did not contain an express preemption provision. The fact that an express preemption provision has since been added does not impact claims submitted prior to the amendment. The Court adopts the reasoning of the *Scherz* court with respect to express preemption and finds that the October 2000 amendments cannot control the outcome in the instant case. 112 F.Supp.2d at 1004-1005. Accordingly, Defendant has failed to establish that Plaintiff's claim is barred by the doctrine of express preemption.

#### b. *Field Preemption.*

[3] Under the field preemption doctrine, federal regulation of a given field may be so pervasive that it displaces and preempts state law. *See English*, 496 U.S. at 78-79, 110

S.Ct. 2270. Defendant argues that field preemption also bars Plaintiff's claim. Congress has provided FEMA with the authority to promulgate regulations relating to the adjustment of claims arising under the NFIA. *See* 42 U.S.C. § 4019. WYO insurers are required to comply with FIA policy issuances and other guidance issued by FEMA. *See* 44 C.F.R. Pt. 62, App. A, Art. II(A)(2).

[4] The Court finds that Defendant has not established that the field preemption doctrine bars Plaintiff's bad faith claim. As discussed in *Scherz*, it is apparent from the language of the governing regulation itself that certain state law tort claims against WYO insurers are not outside the scope of the arrangement between FEMA and WYO insurers. The section entitled "Limitation of Litigation Costs" provides as follows:

> Following receipt of notice of [a litigation claim against a WYO insurer], the Office of General Counsel (OGC), FEMA, shall review the information submitted. If it is determined that the claim is grounded in actions by the Company that are outside the scope of [the WYO insurer-FEMA] Arrangement, the [NFIA], and [governing regulations], and/or involve issues of insurer/agent negligence, the OGC shall make a recommendation to the Administrator as to whether the claim is grounded in actions by the Company that are significantly outside the scope of this Arrangement.

44 C.F.R. Pt. 62, App. A. Art. III(D)(4). The Court agrees with the *Scherz* court that this language addressing the determination of whether a claim is "outside the scope" of the WYO insurer-FEMA arrangement is inconsistent with Defendant's assertion that Congress intended the preempt the field. It is apparent from the language of the regulation that not all claims are within the scope of the WYO-FEMA arrangement. Hence, the Court concludes that Defendant has failed to establish that Plaintiff's bad faith claim is barred by the doctrine of field preemption.

### c. Conflict Preemption.

[5] The doctrine of conflict preemption applies "where either 1) it is impossible for a private party to comply with both state and federal requirements or 2) where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *See Scherz*, 112 F.Supp.2d at 1007, citing *English*, 496 U.S. at 79, 110 S.Ct. 2270. Defendant contends that Plaintiff's bad faith claim is barred under the conflict preemption doctrine because WYO insurers cannot comply with both state law standards for handling insurance claims and their obligations to the federal government as fiduciaries and fiscal agents. Specifically, Defendant asserts that state recognition of the tort of bad faith when an insurer unreasonably withholds policy benefits because *988 of its financial incentive to delay or withhold payment is completely at odds with the NFIP, in which WYO insurers make money only by paying claims, thus creating an incentive for WYO insurers to pay as much as possible. In Defendant's estimate, if this Court were to find that state

laws and regulations may be imposed upon WYO insurers to govern their adjustment of NFIP claims, FEMA will lose its ability to control federal disbursements by the WYO insurers, creating an impermissible conflict between state and federal law. [FN3]

> FN3. To support its position, Defendant cites a host of cases in addition to *Scherz* in which courts have found that state law claims arising from the mishandling of SFIP claims were preempted by federal law. *See, e.g., Gibson v. American Bankers Ins. Co.*, 289 F.3d 943, 948-950 (6th Cir.2002); *West v. Harris*, 573 F.2d 873, 879-81 (5th cir.1978); *Berger v. Pierce*, 933 F.2d 393, 394, 397 (6th Cir.1991); *Bianchi v. State Farm Fire & Cas. Co.*, 120 F.Supp.2d 837 (N.D.Cal.2000); *Mason v. Witt*, 74 F.Supp.2d 955 (E.D.Cal.1999).

[6] In his opposition, Plaintiff contends that his claim is not preempted for the reasons set forth in *Davis*, 96 F.Supp.2d 995 (N.D.Cal.2000). [FN4] In *Davis*, the district court concluded that the defendant insurer could have complied with state and federal law with no conflict because "[n]o federal law required that [the defendant] guide insureds through the claims process, and no federal law required that [the defendant] omit from its guidance the sworn proof of loss." 96 F.Supp.2d at 1004. The *Davis* court determined that once the insurer undertook to guide the insured plaintiffs through the claims process, it had a duty not to mislead them. *Id.*

> FN4. Plaintiff also argues that because the NFIA does not provide for express remedies of its violation, he may seek state law remedies. As a preliminary matter, Plaintiff is not entitled to assert his bad faith claim solely because the NFIA does not provide a cause of action for bad faith. Moreover, as Defendant correctly points out in its reply, Plaintiff has a remedy for the harm he has alleged: he may ask FEMA to waive its rules and limitations and to allow the payment of his claim. *See Flick v. Liberty Mutual Ins. Co.*, 205 F.3d 386, 396 (9th Cir.2000); 44 C.F.R., Pt. 61, App. A(1) Art. 9(D). The fact that Plaintiff has failed to seek this federal law remedy is not in itself a sufficient basis to find him entitled to state law relief.

Plaintiff's reliance on *Davis* is misplaced. First, it conflicts with the bulk of the cases on the issue. *See* note 3 above. As Defendant points out in its reply, *Davis* is one of only two cases [FN5] finding that the NFIA did not preempt state law claims arising from SFIP claims handling. Since the decision in *Davis* was issued, it has been criticized and largely disregarded in a host of other NFIA decisions. *See, e.g., Novikov v. Allstate Inc. Co.*, 2001 WL 880852 (E.D.Cal. Jul 11, 2001); *Eaker v. State Farm Fire and Cas. Ins. Co.*, 216 F.Supp.2d 606 (S.D.Miss.2001). Second,

*Davis* is in conflict with *Flick v. Liberty Mutual Fire Ins. Co.*, in which the Ninth Circuit specifically stated that "a claim [ ]against [a] WYO Insurer in federal court... is, in reality, a claim against the federal government." 205 F.3d 386, 393 n. 10 (9th Cir.2000). [FN6]

> FN5. The other, *Stanton v. State Farm Fire and Cas. Co., Inc.*, 78 F.Supp.2d 1029 (D.S.D.1999), is not implicated here, as the argument in *Stanton* was limited to field preemption.
>
> FN6. Plaintiff argues that he seeks recovery from Defendant, not the United States Treasury. To that end, Plaintiff requests an order from the Court that Defendant be required to pay Plaintiff without reimbursement from the Treasury. FEMA, not the Court or the parties, determines those circumstances under which a WYO insurer will be reimbursed by the Treasury. Plaintiff's willingness to stipulate that the funds be recoverable only from Defendant is irrelevant.

[7][8][9] Finally, there is a sufficient basis for finding both impossibility of compliance and frustration of Congress's purposes and *989 objectives if Plaintiff is allowed to pursue his bad faith claim, thereby necessitating a finding of conflict preemption, as discussed at length in *Scherz*. Under federal law, "an insured must comply strictly with the terms and conditions of a federal insurance policy," including a SFIP's 60-day proof of loss requirement. *Flick*, 205 F.3d at 390-391. However, under California law, an insurer may not deny a claim based on a defective notice or proof of loss if an insurer has "substantially complied with those conditions." *McCormick v. Sentinel Life Ins. Co.*, 153 Cal.App.3d 1030, 1046, 200 Cal.Rptr. 732 (1984). Clearly, the federal strict compliance standard is at odds with the California substantial compliance one, and a WYO insurer cannot comply with both. Even more persuasive is the frustration of Congressional purpose argument. As indicated in *Scherz*, the possibility that WYO insurers will not be reimbursed presents an obstacle to Congressional goals in enacting the NFIA, as potential exposure to judgments would make WYO insurers more likely to "err on the side of overpaying claims, in an effort to insulate themselves from potential bad faith liability." 112 F.Supp.2d at 1008. This would have the unwanted results of (1) the federal government paying more money to claimants than required and (2) defeating the objective that insurers receive profit only through strict compliance with regulations. [FN7] *Id*. In addition, allowing insureds to assert tort claims against WYO insurers would frustrate the NFIA's goal of uniformity by granting different rights to insureds depending on whether their SFIP was issued by FEMA or by a WYO insurer, as the sole remedy for alleged claims-mishandling by FEMA would be a cause of action for breach of contract. *Id*. at 1008-1009. Based on the foregoing, and for the reasons set forth in *Scherz*, the Court finds that the conflict preemption doctrine applies to Plaintiff's bad faith claim. Accordingly, the Court

GRANTS Defendant's motion for judgment on the pleadings and DISMISSES Plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing. [FN8]

> FN7. Plaintiff asserts that because Defendant receives an adjuster's commission whether it pays or denies a claim and that the reimbursement it is entitled to for litigating claims constitutes a greater benefit to Defendant than the reimbursement it would have received for paying the claim, Defendant has an incentive to deny claims. This assertion is without merit. Not only is the commission rate the same regardless of whether it is on payment of a claim or litigation of a claim, but a WYO insurer is not entitled to reimbursement for litigation of claims in all cases, as discussed above. Plaintiff has provided no support for his theory that a WYO insurer has an incentive to gamble on the *possibility* of an arguably larger payout for the litigation of a claim against the *certainty* of reimbursement for the payment of the same claim.
>
> FN8. The Court DENIES Plaintiff's perfunctory request to amend, both because it is vague and also because it is untimely and lacks a showing of diligence required under *Johnson v. Mammoth Recreations Inc.*, 975 F.2d 604 (9th Cir.1992). In addition, amendment would be futile given the Court's ruling as a matter of law.

### 3. *Plaintiff's Prayers for Punitive Damages and Interest are Preempted by Federal Law.*

[10] Defendant contends that if the Court finds that Plaintiff's bad faith claim is preempted, his prayer for punitive damages will be moot as there is no statutory or regulatory support under the NFIA allowing recovery of punitive damages. For support, Defendant cites *Eddins v. Omega Ins. Co.*, 825 F.Supp. 752, 753 (N.D.Miss.1993) and *3608 Sounds Ave. Condo., Ass'n v. South Carolina Ins. Co.*, 58 F.Supp.2d 499 (D.N.J.1999). In addition, Defendant argues that Plaintiff is not entitled to interest on the SFIP benefits *990 which he claims are owed to him, as a "no-interest" rule applies to claims against the U.S. Treasury, and an SFIP claim is such a claim, citing *Newton v. Capital Assur. Co.*, 245 F.3d 1306, 1310 (11th Cir.2001). In his opposition, Plaintiff asserts that because his bad faith claim is not preempted and his claim is not against the U.S. Treasury, he is entitled to both interest and punitive damages and Defendant's request to strike his prayers for this relief should be denied.

As the Court has found the Plaintiff's bad faith claim is preempted, the Court agrees with Defendant that Plaintiff is entitled to neither punitive damages nor interest for his breach of contract claim. Accordingly, Plaintiff's prayer for punitive damages and interest is STRICKEN.

B. Defendant's Motion for Summary Judgment.

Defendant also moves for summary judgment on the ground that the SFIP's proof of loss requirement could not have been waived in the instant case, and that Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing must therefore be dismissed based on his failure to strictly comply with the terms of the SFIP. In the alternative, Defendant moves for summary adjudication of Plaintiff's bad faith claim on the ground that there are genuine disputes over 1) the existence of a covered flood, 2) whether Plaintiff's failure to submit the required proof of loss barred his claim and 3) whether the earth movement and land subsidence exclusions applied. [FN9] Plaintiff opposes the motion, arguing that FEMA's rules on when proof of loss may be waived do not have the force of law and are irrelevant, and that even if they were binding, Defendant's argument is barred by the law of the case doctrine. In its reply, Defendant reiterates its position that Plaintiff's claim does not come within the limited circumstances in which waiver of the proof of loss requirement is authorized and discounts Plaintiff's law of the case argument. [FN10]

> FN9. Although the Court has already determined that Plaintiff's bad faith claim is preempted by federal law, it will briefly address this alternative argument.

> FN10. Because the Court has already determined that Plaintiff has long-since abandoned his fraud claim, it is unnecessary to address Defendant's arguments on this issue in its reply, although the Court finds that the arguments presented have merit.

1. *Plaintiff Has Failed to Raise A Triable Issue of Material Fact Precluding Summary Adjudication on the Issue of Whether the SFIP's Proof of Loss Requirement Could Be Waived.*

[11] The SFIP provides, in relevant part, that "we may, at our option, waive the proof of loss requirement *in certain cases.*" (SFIP at 26)(emphasis added). The Ninth Circuit did not construe this limitation in its opinion. *See Pecarovich v. Allstate Ins. Co.,* 317 F.3d 938, 939 n. 11 (9th Cir.2003) ("Allstate argues for the first time that it is precluded from waiving the proof of loss requirement by a guideline in the FEMA Flood Insurance Manual allowing waivers only for claims under $7,500. We do not decide this issue here."). In his opposition, Plaintiff argues that under the law of the case doctrine, Defendant is precluded from asserting its argument concerning the "in certain cases" limitation. Defendant disagrees, stating in its reply that had the Ninth Circuit intended to prohibit Defendant from raising this argument or to prevent this Court from ruling on it, the court would have made this explicit in its opinion.

[12] Under the "law of the case" doctrine, a court may not decide issues already "**991 decided either expressly or by necessary implication" on appeal. *See Silber v. Mabon,* 18 F.3d 1449, 1453 (9th Cir.1994). The Ninth Circuit expressly indicated that it was *not* deciding the issue of whether the proof of loss requirement could be waived only for claims of less than $7,500. Additionally, in issuing its decision, the Ninth Circuit expressed no intention to preclude this Court from interpreting the language of the SFIP and deciding on the issue on remand. Based on the foregoing, the Court finds that it is not precluded from ruling on this issue under the law of the case doctrine.

[13] Defendant argues that it is entitled to summary judgment because FEMA's rules do not authorize waiver of the proof of loss requirement in the instant case, and that because Plaintiff failed to submit a proof of loss and Defendant could not have waived the requirement, Plaintiff's claim for breach of contract cannot survive. As indicated above, the SFIP limits circumstances under which the proof of loss requirement may be waived to "certain cases." Defendant asserts that FEMA rules clearly demonstrate that the "certain cases" for which waiver is available are claims for less than $7,500. For support, Defendant cites FEMA's NFIP Adjuster Claims Manual, which provides that "[t]he NFIP Proof of Loss Form is required on all advance payments, as well as on any paid claim. However, the Proof of Loss may be waived on claims under $7,500... If the loss is over $7,500, ... a Proof of Loss *must* be obtained." (Def.'s Req. for Jud. Not., Ex. 1 at VII-5.)(emphasis added) Defendant also cites FEMA's Flood Insurance Manual, which provides that "[t]he Proof of Loss form may be waived on claims for less than $7,500." (*Id.,* Ex. 2 at CL-1.) [FN11] According to Defendant, these manuals are incorporated by reference into the governing regulations and therefore have the force of law. *See* 44 C.F.R. 62.23(i)(1)("WYO companies will adjust claims in accordance with general Company standards, *guided by NFIP Claims manuals* ") (emphasis added). [FN12] In the instant case, Plaintiff's claim was in excess of $200,000. Based on Defendant's understanding of the relevant law and the guidance promulgated by FEMA, Plaintiff's claim could not come within the exception for "certain cases" for which the proof of loss requirement could be waived. Accordingly, Defendant concludes that Plaintiff's failure to submit a proof of loss is a bar to his recovery.

> FN11. Other claims manuals and guidance contain similar language limiting circumstances in which the proof of loss requirement may be waived. *See id,* Ex. 3, Write Your Own Claims Manual (1986)("[T]he Proof of Loss form may be waived by the NFIP on claims under $7,500."); Ex. 4, FEMA Adjuster Manual (1988) at 82 ("[T]he Proof of Loss form may be waived on claims under $7,500... If the loss if over $7,500, the final report must still be completed and a Proof of Loss *must* be

obtained.") (emphasis added); Ex. 5, National Flood Insurance Program Audit Informational Bulletin 98-1 at 2 ("The program requires the submission of a signed proof of loss for claims in excess of $7500. Any waiver of this provision would impede and ultimately affect cases of litigation. Accordingly, companies are expected to receive and maintain a signed proof of loss in the claim file for all losses in excess of $7500.").

FN12. *See also* 44 C.F.R. Pt. 62, App. A, Art. II(A)(2)("Companies will be required to comply with FIA Policy Issuances and other guidance authorized by FIA or [FEMA]."); *Southpointe Villas Homeowners Ass'n v. Scottish Ins. Agency*, 213 F.Supp.2d 586, 593 (D.S.C.2002)(finding that a federal policy set forth in the NFIP's Flood Insurance Manual warranted uniform interpretation since allowing the development of alternative interpretations would result in a "patchwork quilt" of consequences, standing in the way of the NFIP's goal of insuring uniform applicability of its rules and policies).

In his opposition, Plaintiff argues that the FEMA manuals do not have the force *992 of law and are therefore not binding upon Plaintiff or other policyholders. Plaintiff contends that only regulations that have been subjected to the APA notice and comment process may have the force of law, and that the FEMA internal manuals are therefore merely instructive. For support, he cites *American Bus Ass'n v. United States*, 627 F.2d 525 (D.C.Cir.1980) and *Community Nutrition Institute v. Young*, 818 F.2d 943 (D.C.Cir.1987). In addition, Plaintiff asserts that because Defendant claimed during discovery that the manuals were irrelevant, it cannot now contradict its prior position.

In its reply, Defendant argues that Plaintiff is mistaken in his belief that the $7,500 limitation is not incorporated by reference in the governing regulations and that Plaintiff's argument concerning Defendant's discovery responses is entirely meritless, as the waiver of proof of loss requirement argument had not been raised at that time. According to Defendant, the governing regulations specifically state that the manuals will be incorporated by reference, again citing 44 C.F.R. § 62.23(i)(1) and 44 C.F.R. Pt. 62, App. A, Art. II(A)(2). In the Defendant's view, these regulations put Plaintiff on notice that FEMA's claims manuals, including the $7,500 limitation for waiver of the proof of loss requirement, governed his claim.

Defendant also advances an alternative theory: namely, that regardless of whether the manuals are deemed part of the regulations, they constitute FEMA- prescribed guidance and are therefore entitled to controlling weight in interpreting what FEMA meant by "in certain cases." To support this assertion, Defendant cites *Bowles v. Seminole Rock & Sand Co.*, in which the Supreme Court stated that where the meaning of words used is in doubt, in interpreting an

administrative regulation, the court may look to the agency's construction of that regulation, which "becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." 325 U.S. 410, 413-414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). Defendant argues that because FEMA's interpretation of "in certain cases" set forth in its manuals is neither plainly erroneous nor inconsistent with the regulation, it has controlling weight. *See Criger v. Becton*, 902 F.2d 1348, 1351 (8th Cir.1990)(in the NFIP context, FEMA's interpretation of its own regulation is entitled to deference). Furthermore, Defendant claims that without FEMA's guidance, the Court would have no basis upon which to interpret the "in certain circumstances" limitation. Defendant concludes that Plaintiff is not entitled to rely upon the SFIP for the position that the proof of loss requirement can be waived but to ignore FEMA's limitation upon such waiver. [FN13]

> FN13. With respect to Plaintiff's claim that the limitation is inapplicable because it was not subject to the APA's notice and comment procedure, Defendant asserts that Plaintiff's reliance on *American Bus* and *Community Nutrition* is unwarranted, as these cases involved situations in which an administrative agency attempted to make a new rule or regulation, rather than an agency's interpretation of a pre-existing regulation.

The Court agrees with Defendant that FEMA's interpretation of the "in certain circumstances" limitation, as set forth in its manuals, is controlling here. First, governing regulations clearly indicate that WYO insurers must be guided by the policy manuals promulgated by FEMA. The policy manuals state that proof of loss must be submitted for all claims in excess of $7,500. Plaintiff has cited no authority to contradict the plain language of the manuals. Second, an administrative agency's interpretation of its own regulation is entitled to deference. *See Criger*, 902 F.2d at 1351, citing *Gardebring v. Jenkins*, *993 485 U.S. 415, 430, 108 S.Ct. 1306, 99 L.Ed.2d 515 (1988). FEMA's manuals and other guidance demonstrate its intent to limit those circumstances in which the proof of loss requirement may be waived to those claims for less than $7,500. Third, regarding Plaintiff's contention that Defendant is precluded from raising the argument based on its prior discovery responses, the Court agrees with Defendant that because the issue of Defendant's waiver of the proof of loss requirement had not been raised at that time, Defendant's response that the manuals were irrelevant was justifiable. Finally, Defendant is correct in its assertion that Plaintiff cannot cite a FEMA regulation to support his position that an insurer may waive the proof of loss requirement, but ignore the language governing the circumstances under which such waiver may be given.

Based on the foregoing, the Court finds that as a matter of law Defendant could not waive the proof of loss requirement for Plaintiff's claim, as it exceeded $7,500.

Plaintiff has asserted no facts to support a finding that Defendant waived the proof of loss requirement, or that Plaintiff submitted a sworn proof of loss. As discussed above, "the conditions of an insurance policy offered pursuant to a congressionally mandated program, such as the NFIP, must be strictly observed." *Wagner v. Director, FEMA*, 847 F.2d at 518. Plaintiff has failed to raise a triable issue of material fact precluding summary adjudication on the issue of whether Defendant could have waived the SFIP's proof of loss requirement. Accordingly, Plaintiff's remaining claim for breach of contract must be DISMISSED.

*2. Plaintiff Has Failed to Raise a Triable Issue of Material Fact Precluding Summary Adjudication Under California Law.*

[14] In its recitation of the facts, Defendant states that following an inspection of the Property, Earl Beal, an NFIP representative in the Laguna Beach area, stated that the damage to the Property was not covered under the SFIP. (*See* Declaration of Richard Rossi ("Rossi Decl.") ¶¶ 3, 4.) Beal confirmed this determination in a written report to the NFIP. (Ex. 1 to Rossi Decl., 3/25/98 report from Earl Beal to Greta Richardson.) In his report, Beal indicated that the "[e]vent failed to meet test of a general condition of flooding as defined by this Program." (*Id.*)

Despite this determination, Rossi, the adjuster handling Plaintiff's claim, attempted to find a way to extend coverage for the loss, and to that end contacted Dick Allen, an NFIP official with the authority to override Beal's initial coverage determination. (Rossi Decl. ¶ 5.) Allen told Rossi that he would be willing to reconsider the coverage determination contained in Beal's report if Rossi provided him with (1) a geology report on conditions at the Property, (2) a structural engineering report with repair recommendations and (3) a cost estimate prepared by Rossi based on the engineers' repair recommendations. (*Id.*) Rossi informed one of Defendant's representatives of the conversation with Allen. (*Id.* ¶ 6.) Although under no obligation to do so, Defendant agreed to pay the cost of obtaining these reports. (*Id.*) Following this discussion, Rossi met with Plaintiff and informed him of Beal's initial coverage determination, Allen's agreement to reconsider the determination if the above-referenced documentation was prepared and Defendant's agreement to pay the cost of obtaining the reports necessary for Allen to reconsider Beal's coverage determination. (*Id.* ¶ 7.) Rossi agreed that Plaintiff could select the engineers to prepare the reports. (*Id.* ¶ 8.) During the summer of 1998, Rossi received the geological investigation report. (*Id.*) However, despite a number of requests made by *994 Rossi to the engineer retained by Plaintiff to prepare the structural engineering report and repair recommendations, Rossi never received a copy of the report. (*Id.* ¶ 9.) Because of this, Rossi could not complete the package necessary for Allen to reconsider the initial coverage determination. (*Id.*) [FN14]

FN14. In his opposition, Plaintiff presents a different version of the facts. Plaintiff omits from his scenario the initial determination that the claim was not covered. Instead, Plaintiff asserts that Rossi assumed responsibility for preparing the "insurance company report." No mention is made of Plaintiff's responsibility for obtaining a structural engineering report, nor does Plaintiff indicate that invoices for the engineers were ever submitted to Defendant for payment. Crucially, Plaintiff's version of the facts does not contain a single citation to admissible evidence. As such, the Court regards it as argument which is not entitled to any weight against the sworn statement of Richard Rossi.

In July of 1999, Beal contacted Rossi regarding the status of Plaintiff's claim, and shortly afterward faxed Rossi a copy of his "Position Restatement" report reiterating that Plaintiff's loss was not covered. (*Id.* ¶ 12 and Ex. 4.) In denying the claim, Dick Ray, unit claims manager for Allstate, reviewed Beal's two reports and the geological investigation report submitted by Ian Kennedy, and contacted Beal concerning his investigation of the claim and the NFIP's position. (Declaration of Dick Ray ¶¶ 1, 3, 6.) Beal informed Ray that the NFIP's position was that the loss was not covered and that if Defendant paid the claim, the payment would not be reimbursed with federal funds. (*Id.* ¶ 6 and Ex. 4.) Based on the foregoing, on October 20, 1999, Ray sent Plaintiff a denial letter, which was supplemented on November 10, 1999, indicating that the denial of coverage was based both on the absence of coverage and Plaintiff's failure to submit a sworn proof of loss. (*Id.* ¶¶ 3-4; Exs. 2,3.)

Defendant argues that based on the facts set forth above, Plaintiff's bad faith claim fails as a matter of law because the mere fact that an insurer withholds benefits does not establish a breach of the implied covenant of good faith and fair dealing under *Chateau Chambaray Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal.App.4th 335, 347, 108 Cal.Rptr.2d 776 (2001). Instead, Defendant asserts that where a genuine dispute exists concerning the obligation to pay, no bad faith liability may be imposed, citing *Fraley v. Allstate Ins. Co.*, 81 Cal.App.4th 1282, 1292, 97 Cal.Rptr.2d 386 (2000). Based on the facts presented, Defendant contends that (1) it is clear that there was a genuine dispute over the existence of a covered loss, (2) Plaintiff's failure to strictly comply with the SFIP by submitting a proof of loss created a genuine dispute over whether his claim was barred under federal regulations and (3) there was a genuine dispute over whether exclusions for earth movement and land subsidence applied, based on the report supplied by Plaintiff's engineer. Ian Kennedy, Plaintiff's engineer, submitted an engineering report indicating that the damage to the Property "occurred because the surface and near-surface supporting ground were underlain by artificial fill and landslide debris which were relatively compressible or collapsed when they became

wet or saturated during the recent rainy season." (Rossi Decl., Ex. 2 at 20.) Defendant concludes that the foregoing facts created both a factual and a legal dispute as to whether the damage came within one of the policy's exclusions, thereby precluding its liability for bad faith as a matter of California law.

The Court agrees with Defendant that even if Plaintiff's bad faith claim was not preempted (and the Court has already determined that it is), it fails on this independent basis. The record clearly demonstrates that there was a genuine dispute *995 over whether Plaintiff's claim was covered and whether an exclusion applied. Moreover, Plaintiff's failure to strictly comply with the SFIP by submitting a sworn proof of loss created a genuine dispute as to whether Plaintiff was entitled to coverage. Under these circumstances, Plaintiff cannot state a claim for bad faith under California law. Accordingly, the Court finds that Plaintiff has failed to raise a triable issue of material fact precluding summary judgment on this independent basis. [FN15]

> FN15. Although Defendant did not bring its entire motion for summary judgment on the basis of the facts recited herein, the Court finds that these facts would support an independent basis for a grant of summary judgment in Defendant's favor. Plaintiff has failed to raise *any* admissible evidence to dispute the fact that a negative coverage determination with respect to Plaintiff's claim had already been made by an NFIP representative. Plaintiff would therefore be hard-pressed to state a claim for breach of contract, as denial of a claim alone does not constitute breach of contract. The Court finds that based on the prior coverage determination and Plaintiff's apparent failure to provide the documentation required for the determination to be reconsidered, dismissal of Plaintiff's complaint on this independent basis would be appropriate.

## IV. CONCLUSION

Based on the foregoing, the Court rules as follows:

1. Defendant's Motion for Judgment on the Pleadings is GRANTED; and

2. Defendant's Motion for Summary Judgment is GRANTED.

Accordingly, Plaintiff's complaint is DISMISSED and Plaintiff's prayer for punitive damages and interest is STRICKEN.

272 F.Supp.2d 981

END OF DOCUMENT

# EXHIBIT 5

DEFENDANT'S MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS STATE LAW CLAIMS

SHUWAYHAT v. FIDELITY
CASE NO. C-07-05351 MHP

112 F.Supp.2d 1000
(Cite as: 112 F.Supp.2d 1000)

United States District Court,
C.D. California.

James SCHERZ, Plaintiff,
v.
SOUTH CAROLINA INSURANCE COMPANY,
Defendant.

No. CV 99-13486 AHM (RZx).

Sept. 21, 2000.

Insured sued private write-your-own (WYO) flood insurer for breach of implied covenant of good faith and fair dealing based on insurer's handling of claim. Insurer moved to dismiss based on preemption of insured's state-law claim by National Flood Insurance Act (NFIA). The District Court, Matz, J., held that: (1) field preemption did not apply, but (2) conflict preemption precluded action.

Motion granted.

West Headnotes

[1] Federal Civil Procedure k1832
170Ak1832

Material which is properly submitted as part of complaint may be considered by district court on motion to dismiss for failure to state claim.    Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

[2] Federal Civil Procedure k1832
170Ak1832

Documents whose contents are alleged in complaint and whose authenticity no party questions, but which are not physically attached to pleading, may be considered by district court on motion to dismiss for failure to state claim, without converting motion into one for summary judgment. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

[3] Insurance k1110
217k1110

[3] States k18.41
360k18.41

Fact that regulations under National Flood Insurance Act (NFIA) contemplated negligence actions against private write-your-own (WYO) insurers precluded assertion of field preemption defense against insured's state-law action alleging insurer's breach of covenant of good faith and fair dealing. National Flood Insurance Act of 1968, § 1302 et seq., 42 U.S.C.A. § 4001 et seq.; 44 C.F.R. Pt. 62, App. A, Art. III(D)(4).

[4] States k18.5
360k18.5

Conflict preemption applies where either: (1) it is impossible for a private party to comply with both state and federal requirements, or (2) where state law stands as an obstacle to accomplishment and execution of full purposes and objectives of Congress.

[5] Insurance k1710
217k1710

[5] Insurance k1829
217k1829

Provisions of an insurance policy issued pursuant to National Flood Insurance Act (NFIA) are strictly construed and enforced.    National Flood Insurance Act of 1968, § 1302 et seq., 42 U.S.C.A. § 4001 et seq.;    44 C.F.R. § 61.13(d);    44 C.F.R. Part 61, App. A(1), Art. 9(D).

[6] Insurance k3168
217k3168

Under National Flood Insurance Act (NFIA), write-your-own (WYO) insurer need not show prejudice to justify denial of coverage based on insured's failure to comply with policy's proof-of-loss requirement.    National Flood Insurance Act of 1968, § 1302 et seq, 42 U.S.C.A. § 4001 et seq.;    44 C.F.R. § 61.13(d);    44 C.F.R. Part 61, App. A(1), Art. 9(D).

[7] Insurance k1110
217k1110

[7] States k18.41
360k18.41

Conflict preemption precluded insured's state-law claim for breach of implied covenant of good faith and fair dealing against private write-your-own (WYO) flood insurer, alleging, inter alia, failure to act promptly in responding to claim and failure to conduct reasonable investigation; allowance of such claims-handling suits would result in federal government overpaying claims and commissions, and frustrate uniformity purpose of National Flood Insurance Act (NFIA).    National Flood Insurance Act of 1968, § 1302 et seq., 42 U.S.C.A. § 4001 et seq.;    44 C.F.R. Pt. 62, App. A, Art. III(C)(1).

*1001 Martin R. Fox, Los Angeles, CA, for plaintiff.

Gary R. Gleason, Farbstein & Blackman, San Mateo, CA, Gerald J. Nielsen, Nielsen Law Firm, Metairie, LA, for defendant.

ORDER GRANTING DEFENDANT'S MOTION TO

DISMISS PLAINTIFF'S SECOND CAUSE OF
ACTION

MATZ, District Judge.

INTRODUCTION

As Justice Jackson once good-naturedly confessed,
"[p]recedent, however, is not lacking for ways by which a
judge may recede from a prior opinion that has proven
untenable and perhaps misled others.... Baron Bromwell
extricated himself from a somewhat similar embarrassment
by saying, 'The matter does not appear to me now as it
appears to have appeared to me then.' " *McGrath v.
Kristensen*, 340 U.S. 162, 177-78, 71 S.Ct. 224, 233, 95
L.Ed. 173 (1950) (Jackson, J., concurring).

A little more than one year ago, in *Cohen v. State Farm
Fire and Cas.*, 68 F.Supp.2d 1151 (C.D.Cal.1999), in
denying a motion to dismiss brought by a private "Write
Your Own" ("WYO") insurer that had issued a Standard
Flood Insurance Policy ("SFIP"), this Court ruled that the
insurer had not established that the National Flood
Insurance Act ("NFIA"), 42 U.S.C. § 4001 *et seq.*,
preempted the insured's claim for breach of the implied
covenant of good faith and fair dealing. [FN1]  *1002 In
this case, Defendant South Carolina Insurance Company
presents the same issue in its motion to dismiss plaintiff's
state law-based claims. [FN2]  Not only is the fundamental
issue the same, but in both cases the plaintiff's factual
assertions are similar. Are there any intervening factors that
warrant a different result?  The Court believes that the
answer is "yes."  The matter does not appear to me now as
it appears to have appeared to me then.

> FN1. Since then, in citing *Cohen,* two District
> Courts have adopted its analysis and reached the
> same conclusion.  *See Stanton v. State Farm Fire
> and Cas. Co., Inc.,* 78 F.Supp.2d 1029
> (D.S.D.1999);  *Davis v. Travelers Property and
> Cas. Co.,* 96 F.Supp.2d 995 (N.D.Cal.2000).
> One court declined to reach that conclusion.  *See
> Mason v. Witt,* 74 F.Supp.2d 955
> (E.D.Cal.1999).

> FN2. Plaintiff alleges causes of action for 1)
> breach of contract and 2) breach of the
> implied covenant of good faith and fair dealing.
> Defendant's motion attacks only the second cause
> of action.

First, here Defendant has presented a myriad of facts,
arguments and supporting authorities that were not
presented to the Court in the *Cohen* case.  Indeed, the
insurer in the *Cohen* case belatedly attempted to present
some of these arguments in a motion for reconsideration,
which the Court denied as "flagrantly deficient:"

> What State Farm has done in purported support of its
> position that the Court did not consider material facts is

(1) submit a declaration that was not previously
presented, (2) submit for the first time an Amicus Brief
by the United States filed in a Third Circuit case, (3) cite
six cases not previously cited, (4) cite three statutes not
previously cited, (5) cite two regulations not previously
cited, (6) cite two Congressional Reports not previously
cited, and (7) cite the Appropriations Clause of the U.S.
Constitution, also not previously cited.

*Cohen v. State Farm Fire and Cas.,* No. CV 99-4835, slip
op. at 3 (C.D.Cal. Nov. 2, 1999).  In denying the *Cohen*
defendant's motion for reconsideration, the Court observed:

> United States District Courts grapple with and resolve
> numerous motions, many of which involve arcane and
> complex issues.  Although it is common for this Court
> and others to conduct independent research that goes
> beyond the authorities submitted by the parties, every
> court is inevitably dependent on counsel to make their
> arguments explicit and complete.  Here, State Farm's
> lawyers complain that the Court erred.  Perhaps it did,
> but not in the manner the lawyers claim.  This Court will
> "consider" carefully what it is asked to consider.  It
> cannot "reconsider" something that was never previously
> presented to it.

*Id.* at 6.

Another change is that recently the Ninth Circuit
published a decision construing the legislative history of the
National Flood Insurance Act. *See Flick v. Liberty Mutual
Fire Ins. Co.,* 205 F.3d 386 (9th Cir.2000).  There, the
parties stipulated that the plaintiff's state law cause of
actions for breach of contract and breach of the covenant of
good faith and fair dealing were preempted, so the issue
now before this Court once again was not addressed.  But in
holding that an insured is required to comply strictly with
an SFIP, notwithstanding any differences that state law
might otherwise permit, the Ninth Circuit stressed the
overriding importance of uniformity in the administration
of the NFIA and the key role that the Federal Emergency
Management Agency ("FEMA") plays.  As is set forth
more fully below, the Court of Appeals' reasoning and its
language militate in favor of a different conclusion on the
"conflict prong" of the preemption analysis.

FACTUAL ALLEGATIONS

Scherz holds a SFIP issued by Defendant that insures his
residence in Atascadero, California. [FN3]  First Amended
Complaint ("*1003 FAC") ¶ 1. In February 1998, heavy
rainfall flooded the crawlspace underneath plaintiff's
residence.  *Id.* at ¶ 2. A subsequent property inspection
performed in September 1998 in connection with plaintiff's
efforts to sell the property revealed that "the foundational
framing had formed dry rot due to the water saturation that
occurred on or around February 1998." *Id.* at ¶ 14.

> FN3. Defendant issued the SFIP in its capacity as
> a WYO insurer pursuant to the NFIA.

Plaintiff made a claim for coverage in September 1998. *Id.*

In February 1999, a representative of Defendant inspected the foundational frame of plaintiff's residence and calculated the total loss to be approximately $1,766.88. *Id.* at ¶ 15. In July 1999, a FEMA inspector performed a second inspection of the residence. *Id.* at ¶ 16. Unlike the previous inspection, the FEMA inspector did not enter the crawlspace underneath the residence, but "inserted a camera under the [residence] and took pictures of what he believed to be the damaged areas as seen through the camera." *Id.*

Also in July 1999, plaintiff received an independent bid of $50,000 to repair the residence's frame and made a demand to Defendant for an appraisal of the amount of damage. *Id* at ¶ 17. However, in August 1999, Defendant denied coverage under the SFIP on the ground that any damage to his residence was caused by "side slope runoff" rather than flooding of a creek adjacent to the residence. *Id.* at ¶ 18.

Plaintiff contends that Defendant's denial of coverage breached the SFIP. *Id.* at ¶¶ 22-23. In addition, plaintiff alleges that Defendant tortiously breached the implied covenant of good faith and fair dealing by 1) failing to inform plaintiff of his rights under the SFIP; 2) failing to act reasonably and promptly in response to plaintiff's claim for benefits; 3) failing to conduct a reasonable investigation of plaintiff's claim; 4) denying coverage without sufficient information to justify a denial; 5) denying coverage despite the fact that the SFIP covered the damage to defendant's home; and 6) failing to attempt to reach a settlement with plaintiff. *Id.* at ¶ 26(a-g).

## LEGAL STANDARDS

On a motion to dismiss pursuant to F.R.Civ.P. 12(b)(6) for failure to state a claim, the allegations of the complaint must be accepted as true and are to be construed in the light most favorable to the nonmoving party. *Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir.1998). "[A] complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* Where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir.1996).

[1][2] "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.... However, material which is properly submitted as part of the complaint may be considered" on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1989) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d

449, 454 (9th Cir.1994) (*citing Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 879 n. 3 (1st Cir.1991)).

## DISCUSSION

On this motion, understandably, the parties have dealt extensively with the Court's previous decision in *Cohen*. To illustrate why, in contrast to *Cohen*, this plaintiff's claim should be dismissed, in this Order *1004 wherever possible the Court will "track" the analysis in *Cohen*, without repeating what is set forth in that case unless necessary for clarification.

### I. General Preemption Principles

The analysis set forth in *Cohen* is correct and need not be changed. In its most recent term, the Supreme Court issued three decisions concerning preemption, none of which change the analysis and only one of which has any possible bearing on this case. *See discussion of Geier v. American Honda Motor Co., Inc.,* 529 U.S. 1913, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000), *infra.*

### II. Application of Preemption Principles

#### A. Overview of the National Flood Insurance Act [FN4]

> FN4. The statutory and regulatory structure of the NFIA is complex. The Third Circuit's decision in *Van Holt v. Liberty Mutual Fire Ins. Co.,* 163 F.3d 161 (3d Cir.1998), in which the panel reversed its earlier conclusion that a district court lacked subject matter jurisdiction over an insured's state law claims, exemplifies this complexity.

The analysis in *Cohen* is correct, but the following additional features are important.

First, *Cohen* did not take into account the fact that although WYO insurers are entitled to receive processing fees and to recover their administrative costs, those payments are not what provide a meaningful economic incentive to such insurers. WYO insurers make money on SFIPs only if they actually approve a claim and authorize payment, in which case they receive a 3.3% commission on the amounts that are paid. 44 C.F.R. Pt. 62, App. A Art III(C)(1). Therefore, not only does a WYO insurer have an incentive to approve a claim, but the greater the payment, the larger the amount the insurer recovers. In assessing whether precluding state-based claims against those insurers would be consistent or inconsistent with Congress's policy objectives, this incentive may be an important consideration. (See below.)

Second, FEMA has delegated to the WYO insurers the responsibility for "adjustment, settlement, payment and defense of all claims" arising under SFIPs, 44 C.F.R. § 62.23(d), and "[p]ayment of flood insurance claims by the

[WYO insurer] shall be binding on the [Federal Insurance Administration ("FIA") ]." *Id.* at Pt. 62, App. A Art. II(F); § 62.23(i)(1). Moreover, WYO insurers pay SFIP claims with federal funds, initially with premiums they receive, and when those funds are exhausted, by drawing against Letters of Credit issued by FEMA. 44 C.F.R., Pt. 62, App. A Art. III(D)(1). "[R]egardless whether FEMA or a WYO company issues a flood insurance policy, the United States treasury funds pay off the insureds' claims." *Van Holt v. Liberty Mutual Fire Ins. Co.,* 163 F.3d 161, 165 (3d Cir.1998).

B. Express Preemption

The analysis in *Cohen* is sound and need not be changed. Thus, the NFIA does not contain an express preemption provision. [FN5] Indeed, FEMA has recently proposed to add the following provision to all SFIPs:

> FN5. In an amicus brief submitted to the district court in *Davis, supra,* the United States and FEMA acknowledged that the NFIA does not contain an express preemption provision. Brief at 11.

IX. What Law Governs
This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, et seq.), and Federal common law.
65 Fed.Reg. 34837. FEMA explained this proposed change as follows:
Exclusive Federal Jurisdiction and Applicable Law
Standard Flood Insurance Policies are sold by a number of private Write Your *1005 Own (WYO) insurance companies and directly to the public by the Federal Insurance Administration. Because the National Flood Insurance Program is national in scope and accomplishes a number of programmatic missions in addition to making affordable flood insurance generally available to the public, the SFIP provides that its terms cannot be altered, varied or waived except by the written authority of the Federal Insurance Administrator. The Administrator intends that the same benefits should be available to insureds wherever the insured property is located, or whether the policy is purchased from a WYO insurance company or from the Federal Government. Thus, there is a need for uniformity in the interpretation of and standards applicable to the policies and their administration. *Therefore, we have clarified the policy language pertaining to jurisdiction, venue and applicable law to emphasize that matters pertaining to the Standard Flood Insurance Policy, including issues relating to and arising out of claims handling, must be heard in Federal court and are governed exclusively by Federal law.*
*Id.* at 34826-34827 (emphasis added).

In certain circumstances, federal agency regulations may

preempt state law.    *Louisiana Public Service Comm'n v. FCC,* 476 U.S. 355, 369, 106 S.Ct. 1890, 1898-99, 90 L.Ed.2d 369 (1986). This proposed change, if eventually adopted as an agency regulation and incorporated into future SFIPs, will expressly preempt state law claims such as Scherz's implied covenant claim, thereby effectively overruling *Cohen, Stanton* and *Davis.* However, the fact remains that currently this is only a proposed rule, and until its adoption it cannot control the outcome here.

C. Field Preemption

Did Congress intend the Federal Government to "occupy [the field of relationships between flood insurers and their insureds] exclusively?" In *Cohen,* this Court suggested that 42 U.S.C. § 4081(c), which provides that FEMA "may not hold harmless or indemnify an agent or broker for his or her error or omission," belies any basis for field preemption because it shows "that Congress contemplated that state tort law could apply to the conduct of insurers." This Court reasoned that § 4081(c) would make no sense unless insurers could be liable for errors or omissions, and since there is no provision in the NFIA imposing such liability, "the most logical conclusion to be drawn ... is that Congress contemplated that state tort law could apply to the conduct of insurers." *Cohen,* 68 F.Supp.2d at 1157. Defendant argues here that an insurer is different from an agent or broker and points out that the term "insurer" does not appear in subsection (c), but does appear in subsection (a), where insurance agents and brokers are also referred to. From that textual difference, Defendant argues, one must conclude that Congress intended to treat insurance companies differently than insurance agents and brokers. What this contention overlooks, however, is that elsewhere FEMA appears to place insurance companies and agents in the same status. *Cf.* 44 C.F.R. Pt. 62, App. A Art. III(D)(4). Moreover, if state tort law applies to claims against agents and brokers, then Congress did not intend that only federal law would occupy the general field of flood insurance.

What is more fundamental to Defendant's attack on *Cohen,* however, is its contention that *Cohen* failed to distinguish between "claims handling disputes," which are involved here, and disputes involving the initial issuance or procurement of the SFIP. The latter is what was involved in *Spence v. Omaha Indemnity Ins. Co.,* 996 F.2d 793 (5th Cir.1993), upon which this Court relied in *Cohen.* The plaintiffs in *Spence* asserted claims against their WYO insurer for breach of contract and fraud, alleging that they relied on representations by the insurer's sales agent and claims adjuster as to the scope of coverage *1006 afforded by the SFIP, and that these representations later proved false when the insurer denied their claim for flood damage based on a SFIP exclusion. The Fifth Circuit held that the NFIA's one-year statute of limitations barred the plaintiffs' contract claim, but that the state law limitations period governed their fraud claim:
While the national policies underlying the NFIP and

extensive federal role therein impel our conclusion that federal common law governs claims under flood insurance policies, the same does not apply in actions for tortious misrepresentation against WYO insurers ... The more attenuated federal interests in such claims lead to our conclusion that the limitations period governing them derives from state rather than federal law.
*Id.* at 796.

Defendant argues that before *Cohen*, no court permitted an insured to assert state-based tort claims arising out of the manner in which the WYO handled his claim for payment. Defendant relies on *West v. Harris*, 573 F.2d 873 (5th Cir.1978), *cert. denied*, 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979), and other cases following *West* for the proposition that such claims are barred. It is true that *West* held that even if an insurer arbitrarily refuses to pay a claim the insured cannot recover a penalty and attorneys' fees based on a state statute. But (as noted in *Cohen*), in *West* the Court of Appeals did not expressly address whether the NFIA preempts independent state tort claims; it only ruled on the availability of a state-based remedy for what is directly justiciable under the NFIA, *i.e.*, a breach of contract claim. *See Stanton*, 78 F.Supp.2d at 1034 (noting that *West* did not involve independent state law tort claims, but "only the types of damages available for claims under §§ 4053 and 4072 of the [NFIA]").

[3] Very telling is the regulatory provision governing reimbursement of a WYO insurer's litigation costs:
Limitation on Litigation Costs.
Following receipt of notice of [a litigation claim against a WYO insurer], the Office of General Counsel (OGC), FEMA, shall review the information submitted. *If it is determined that the claim is grounded in actions by the Company that are outside the scope of this Arrangement, the National Flood Insurance Act, and 44 CFR chapter 1, subchapter B, and/or involve issues of insurer/agent negligence as discussed in Article IX of this Arrangement, the OGC shall make a recommendation to the Administrator as to whether the claim is grounded in actions by the Company that are significantly outside the scope of this Arrangement.* In the event the Administrator determines that the claim is grounded in actions by the Company that are significantly outside the scope of this Arrangement, the Company will be notified, in writing, within thirty (30) days of the Administrator's decision, if the decision is that any award or judgment for damages arising out of such actions will not be recognized under Article III of this Arrangement as a reimbursable loss cost, expense or expense reimbursement.
44 C.F.R. Pt. 62, App. A Art. III(D)(4) (emphasis added.). By its plain language ("issues of insurer/agent negligence"), this subsection contemplates negligence actions against a WYO insurer. Defendant asserts that this lawsuit alleges no negligence and that the bad faith claim does not fall "outside the scope" of the WYO insurer-FEMA arrangement. But that is not the issue. The issue is

whether this provision is inconsistent with the assertion that Congress, acting through FEMA, intended to occupy the field of relationships between flood insurers and their insureds exclusively by preempting all state law tort claims against WYO insurers arising out of claims handling. The Court concludes that this "Limitation On Litigation Costs" *1007 provision is indeed inconsistent with such an intent. [FN6]

> FN6. Defendant also asserts that FEMA is currently in the process of deleting this provision from its rules. Reply at 6 n. 5. That the provision may be short-lived does not allow the Court to ignore it for purposes of this motion.

For these reasons, then, this Court finds that Defendant has not established that the field preemption basis for disallowing a state-based claim applies here.

D. Conflict Preemption

[4] This is the basis for finding preemption that Defendant asserts most ardently. Conflict preemption applies where either 1) it is impossible for a private party to comply with both state and federal requirements or 2) where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English v. General Elec. Co.*, 496 U.S. 72, 79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990) (citation omitted). In *Cohen*, the defendant, State Farm, "argue[d] that allowing tort claims would frustrate federal interests" but it failed to establish "precisely how or to what extent those interests would be adversely affected." *Cohen*, 68 F.Supp.2d at 1156. Here, in contrast, Defendant does explain precisely how plaintiff's second cause of action conflicts with the NFIA. The Court finds that Defendant has met its burden of establishing preemption under this theory. [FN7]

> FN7. The Court's conclusion that the NFIA preempts plaintiff's second cause of action under a conflict preemption theory does not cast doubt on the ruling in *Stanton v. State Farm Fire and Cas. Co., Inc.*, 78 F.Supp.2d 1029 (D.S.D.1999), because the defendant in that case limited its argument to field preemption. *Id.* at 1033. The *Stanton* Court therefore had no occasion to consider a conflict preemption theory.

1. Impossibility Of Compliance

[5] "Federal law has long recognized that an insured must comply strictly with the terms and conditions of a federal insurance policy." *Flick v. Liberty Mutual Fire Ins. Co.*, 205 F.3d 386, 390 (9th Cir.2000); *see also Gowland v. Aetna*, 143 F.3d 951, 952 (5th Cir.1998) (recognizing that "the provisions of an insurance policy issued pursuant to a federal program must be *strictly construed and enforced*") (emphasis added). The reason for this requirement is that the Constitution's Appropriations Clause "preclude[s] a

court from granting a remedy that draws funds from the Treasury in a manner that is not authorized by Congress." *Flick*, 205 F.3d at 391. In *Flick*, the Ninth Circuit held that the rule of strict compliance applies to a SFIP's 60-day proof of loss requirement, regardless whether the SFIP is issued by FEMA or by a WYO insurer. *See also Gowland, supra* (insured's failure to timely file sworn proof of loss barred claim for benefits under a SFIP even though insureds had provided WYO insurer with a notice of loss). Indeed, a WYO insurer has no choice but to strictly enforce SFIP requirements because the insurer lacks the authority unilaterally to alter or waive any SFIP provision. *See* 44 C.F.R. § 61.13(d); Part 61, App.A(1) Art. 9(D).

[6] Defendant correctly points out that when it comes to how and when an insured may assert a claim for payment, California law is not so harsh as federal law. Under California law, an insurer may not deny a claim based on a defective notice or proof of loss so long as the insured has "substantially complied with those conditions." *McCormick v. Sentinel Life Ins. Co.*, 153 Cal.App.3d 1030, 1046, 200 Cal.Rptr. 732 (1984) (insured's substantial compliance with disability policy's claims filing requirements precluded summary judgment for insurer on insured's claim for breach of the implied covenant of good faith and fair dealing based on insurer's allegedly unreasonable handling of the claim). Similarly, where an insurance policy requires the insured to give the insurer notice of a loss within a prescribed time period, the insurer *1008 may not deny a claim based on the insured's failure to comply with this requirement unless the insurer establishes "actual and substantial prejudice" resulting from such non-compliance. *Ins. Co. of Pa. v. Associated Int'l Ins. Co.*, 922 F.2d 516, 523 (9th Cir.1990) (applying California law). In contrast, a WYO insurer need *not* show prejudice to justify denial of coverage, given that the insured must strictly comply with--and the WYO insurer must strictly enforce--the SFIP's terms and conditions. [FN8]

> FN8. Defendant also asserts that California requires that an insurer comply with the "reasonable expectations of the insured" and that this, too, is inconsistent with federal law. Mem. at 26. This argument is less persuasive. The "reasonable expectations" principle applies where an insurance contract is ambiguous. In such a situation, the ambiguity is generally resolved against the insurer so as to protect the "objectively reasonable expectations of the insured." *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 822, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990). Defendant cites no contrary principle of federal common law governing interpretation of ambiguous insurance contract provisions.

Based on the foregoing, it is clear that when an insured substantially--but not completely--complies with a SFIP's proof of loss requirement, the WYO insurer cannot comply with both California and federal law. [FN9]   The Court might find this argument dispositive if the filing of a proof of loss were an issue in this case, but Defendant does not contend that it denied coverage for Scherz on that ground. Thus, the Court turns to the second prong of the conflict preemption analysis.

> FN9. The defendant in *Cohen* did not raise this argument.

2. Frustration Of Congress's Purposes And Objectives

[7] State law is also preempted where it frustrates the accomplishment and execution of the full purposes and objectives of Congress. It is on this point that Defendant's argument is most persuasive.

An important premise upon which the Court relied in *Cohen* was that the WYO insurer--not the federal government--would ultimately be responsible for paying any judgment against the insurer for breach of the implied covenant of good faith and fair dealing. *See Cohen*, 68 F.Supp.2d at 1158 nn. 9-10. The parties in this case do not squarely address whether the federal government would in fact reimburse Defendant for any damages paid to plaintiff on his second cause of action. Nevertheless, the very possibility that insurers would not be reimbursed would place a stark obstacle in the path of Congress's goals. As noted above, WYO insurers are not compensated through premiums because they must remit those payments to the FIA, with the exception of a small amount necessary to meet current expenditures. *Van Holt*, 163 F.3d at 165. Rather, the WYO insurers receive compensation in the form of a 3.3% commission from the federal government on claims payments they actually make. 44 C.F.R., Pt. 62, App. A Art. III(C)(1). If the government is not obligated to pay judgments based on state law claims, then WYO insurers will likely err on the side of overpaying claims, in an effort to insulate themselves from potential bad faith liability. That would not only result in the federal government paying more money to claimants than required, but it would defeat the corresponding objective that insurers receive "only that profit which is properly attainable through strict enforcement of FIA regulations." Mem. at 25-26.

Moreover, to allow Scherz to assert his second cause of action would also frustrate the purposes of the NFIA by granting different rights to insureds depending on whether their SFIP was issued by FEMA or by a WYO insurer such as Defendant. The terms and conditions of all SFIPs are identical regardless whether issued by FEMA or a WYO insurer. *Flick*, 205 F.3d at 389. According to defendant, FEMA itself issues directly, *i.e.*, without using a WYO insurer, approximately 10% of SFIPs nationwide. It is undisputed that if *1009 FEMA had issued the SFIP directly to Scherz, his sole remedy for any alleged claims mishandling would be a cause of action for breach of contract. To permit Scherz to recover for tortious breach

of the implied covenant of good faith and fair dealing against the WYO insurer for alleged claims mishandling would create an internal inconsistency within an otherwise balanced statutory and regulatory structure.

This conclusion finds support in the Ninth Circuit's recent decision in *Flick*. Although the primary issue in *Flick* was whether the Appropriations Clause requires WYOs to strictly construe a SFIP's proof of loss requirement, the following passage is pertinent here:

> Though our decision is premised on the Appropriations Clause, the outcome of this case is equally supported by the unique interests involved when the federal government participates extensively in a flood insurance program that is national in scope. The success of the NFIP, so far, has depended on the ability of the federal government and participating insurers to offer flood insurance at below actuarial rates. We find no reason to conclude that FEMA has structured flood insurance premiums in anticipation of the possibility that the federal government may have to pay the additional claims of policyholders who fail to comply strictly with the sworn proof of loss requirement or who fail to obtain a valid waiver from the Federal Insurance Administrator. In adhering to a rule of strict compliance, we thus avoid disturbing the delicate balance, which FEMA has sought to strike, between the need to pay claims and the need to ensure the long term sustainability of the NFIP. *We also avoid the inconsistent results that would occur were we to treat standard flood insurance policies differently depending on whether they are written by WYO insurers or FEMA.*

> [T]here is a compelling government interest in assuring uniformity of decision in cases involving the NFIP. *We note that the disposition suggested by the dissent would lead to the anomalous result that standard flood insurance policies written by WYO insurers would be subject to special rules, such as the rule of notice prejudice or substantial compliance, while standard flood insurance policies written by FEMA would not. Such a result would provide greater coverage at the same price to policyholders who purchase insurance through the WYO program and conflict with FEMA's goal that flood insurance policies be "standard."*

*Id.* at 396 & n. 14 (citations omitted) (emphasis added). The Ninth Circuit's concern that WYOs not be subjected to "special rules" counsels in favor of finding conflict preemption here, for to allow an insured to bring a state law tort claim for breach of the implied covenant of good faith and fair dealing against a WYO insurer but not against FEMA would amount to a special rule benefitting only some insureds. [FN10]

> FN10. Moreover, for courts to entertain state-based causes of action involving claims handling could require application of fifty different state laws, which would also frustrate the congressional goal of creating a uniform system for flood insurance.

Next, the Court notes that in an amicus brief submitted to the district court in *Davis, supra*, FEMA argued that both field and conflict preemption bar state law tort claims arising out of a WYO insurer's claims handling. This view is entitled to deference. In *Geier v. American Honda Motor Co., Inc.*, 529 U.S. 1913, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000), the plaintiff asserted a claim under District of Columbia tort law, claiming that her 1987 Honda was negligently designed because it was not equipped with a driver's side airbag. The applicable motor vehicle safety standards promulgated by the Department of Transportation ("DOT") pursuant to the National Traffic and Motor Vehicle Safety **\*1010** Act of 1966 did not require the manufacturer to equip the car with a driver's side airbag. The Supreme Court held that the Act and its implementing regulations preempted the plaintiff's claim. Significantly, the Supreme Court relied in part on the DOT's view of the issue of preemption:

> We place some weight upon DOT's interpretation of [its regulation's] objectives and its conclusion, as set forth in the Government's brief, that a tort suit such as this one would "stan[d] as an obstacle to the accomplishment and execution" of those objectives. Congress has delegated to DOT authority to implement the statute; the subject matter is technical; and the relevant history and background are complex and extensive. The agency is likely to have a thorough understanding of its own regulation and its objectives and is "uniquely qualified" to comprehend the likely impact of state requirements.

*Id.* at 1926. Here, too, the Court gives weight to FEMA's view that state law extracontractual claims relating to SFIPs "interfere with the statutory scheme and frustrate the intent of Congress ..." Brief at 16.

Finally, it is noteworthy that to dismiss the second cause of action for bad faith would not frustrate or defeat Congress's other objective that flood insurance victims be appropriately compensated. "Ordinarily, the threat of punitive damages deters insurance companies from arbitrarily denying legitimate claims in order to be unjustly enriched. In the flood insurance arena however, private insurance companies do not have a pecuniary incentive to deny a claim under a policy issued pursuant to the NFIA because all claims are paid by the federal government." *3608 Sounds Ave. Condominium Ass'n v. South Carolina Ins. Co.,* 58 F.Supp.2d 499, 502 (D.N.J.1999).

For all these reasons, the Court concludes that plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing cannot withstand scrutiny under a conflict preemption analysis. This ruling is narrow; it is limited to the cause of action asserted by plaintiff, which only challenges the manner in which Defendant handled his SFIP claim, not necessarily to other state-based claims against a WYO insurer or an agent. Given this ruling, the Court need not reach Defendant's alternate argument that the Appropriations Clause bars this cause of action.

CONCLUSION

For the foregoing reasons, and good cause appearing therefor, the Court GRANTS Defendant's motion to dismiss plaintiff's second cause of action. The Court also dismisses plaintiff's requests for punitive damages and attorneys' fees, since neither remains a viable remedy for plaintiff's remaining cause of action for breach of contract.

IT IS SO ORDERED.

United States District Judge

END OF DOCUMENT

# EXHIBIT 6

DEFENDANT'S MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS STATE LAW CLAIMS

SHUWAYHAT v. FIDELITY
CASE NO. C-07-05351 MHP

2001 WL 880852
(Cite as: 2001 WL 880852 (E.D.Cal.))
<KeyCite History>
Only the Westlaw citation is currently available.

United States District Court, E.D. California.

Mikhail NOVIKOV and Lyubov Novikov, Plaintiffs,
v.
ALLSTATE INSURANCE COMPANY, a mutual
corporation, and Does 1 through 25,
inclusive. Defendants.

No. Civ. S-01-0305 WBS/G.

July 11, 2001.

*MEMORANDUM AND ORDER*

SHUBB, J.

*1 This is a suit arising out of defendant Allstate Insurance Company's decision not to pay plaintiffs' claim for losses resulting from flood damage. Defendants move to dismiss the second, third and fourth claims of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that those claims are preempted by federal law.

I. *Background*

A. *Factual and Procedural History*

Plaintiffs obtained a Standard Flood Insurance Policy through Allstate in January of 2000, and filed a claim of loss when their property flooded in February. Allstate investigated the claim and denied coverage on the ground that there was "no general condition for flood." (Complaint, Ex. 2, Attached to Notice of Removal, Ex. 3). Plaintiffs filed suit in California Superior Court, alleging claims for breach of contract, breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, negligent infliction of emotional distress, and declaratory relief. Allstate removed the action to this court on the ground that the National Flood Insurance Act of 1968 ("NFIA"), 42 U.S.C. § 4001, *et seq.*, vests the federal courts with exclusive jurisdiction over plaintiffs' claims. *See* 42 U.S.C. § 4072.

B. *Applicable Law*

Congress enacted the NFIA to address the need for reasonably priced flood insurance. *See* 42 U.S.C. § 4001(a), (b); *Flick v. Liberty Mut. Fire Ins. Co.,* 205 F.3d 386, 387 (9th Cir.2000). The NFIA established the National Flood Insurance Program (the "program"), under which the federal government offers flood insurance "at below actuarial rates for high risk structures erected before the preparation of the community's flood insurance rate map." *Flick,* 205 F.3d at 388. One method under the NFIA

allows an "associated pool of private insurance companies to implement a privately operated program," compensated by federal "premium equalization payments." *See* 42 U.S.C. §§ 4051, 4052; *id.* The other method authorizes the federal government "to implement an alternative program through the facilities of the federal government." *See* 42 U.S.C. § 4071; *id.*

In 1978, the Federal Emergency Management Agency ("FEMA") assumed managerial responsibility for the operation of the program, which was initially administered by the Department of Housing and Urban Development ("HUD"). *See Flick,* 205 F.3d at 388-89. Pursuant to its regulatory authority, FEMA created the "Write Your Own" ("WYO") program, which employs private insurers as "fiscal agents" of the United States to market Standard Flood Insurance Policies ("SFIPs"). *Id.* at 389. Under the WYO program, private insurers ("WYO insurers") write SFIPs under their own names, and deposit collected premiums in the United States Treasury. The SFIPs are offered under the auspices of the National Flood Insurance Program, and are identical in scope and in cost to policies issued directly by FEMA. *See id.* [FN1] Accordingly, the SFIPs cannot be altered absent express authorization from FEMA. The federal government pays all SFIP claims, and federal courts have "original exclusive jurisdiction" over disputes arising out of the disallowance or adjustment of any such claim. *See* 42 U.S.C. § 4072.

> FN1. Approximately ninety percent of the SFIPs issued under the program are issued by WYO insurers, with the other ten percent being issued directly by FEMA.

II. *Discussion*

*2 A district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). In ruling on a 12(b)(6) motion, the court must view all allegations and draw all inferences in the light most favorable to the non-moving party. *See NL Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986). The court may not dismiss for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).

Allstate moves to dismiss plaintiffs' claims for breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, and negligent infliction of emotional distress, because these claims are preempted by the NFIA. [FN2]

> FN2. Defendants also argue that the same claims are barred by the Appropriations Clause of the

United States Constitution, Const. Art. I § 9, cl. 7. Because the court concludes that these claims are preempted, the court does not consider this argument.

Federal preemption of state law occurs when: (1) Congress expressly states that a certain enactment preempts state law ("express preemption"); (2) Congress regulates conduct in a field intended to be occupied exclusively by the Federal Government ("field preemption"); or (3) state law actually conflicts with federal law ("conflict preemption"). *See English v. General Elec. Co.*, 496 U.S. 72, 78-79 (1990).

In *Mason v. Witt*, 74 F.Supp.2d 955, 963 (E.D.Cal.1999), Magistrate Judge O'Neill of this court makes a persuasive argument that the NFIA preempts state law tort claims on the basis of express preemption. [FN3] *See also Bianchi v. State Farm Fire and Casualty Co.*, 120 F.Supp.2d 837 (N.D.Cal.2000). Because this court finds a stronger argument for preemption on the basis of a conflict between state and federal law, however, the court need not adopt the analysis in *Mason*.

> FN3. Magistrate Judge O'Neill relied on the language of section 4053. Section 4072, which is applicable here, contains identical language: [U]pon the disallowance of any such claim [for proved and approved losses covered by flood insurance,] the claimant ... may institute an action against [FEMA or the WYP company] on such claim in the United States district court in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.
> 42 U.S.C. § 4072. The courts in *Mason* and *Bianchi* concluded that this language manifests "Congress' intent to make district court jurisdiction exclusive and to disallow remedies in state court." *Bianchi*, 120 F.Supp.2d at 840; *Mason*, 74 F.Supp.2d at 963 ("Congress clearly manifested an intent to allow only for claims on the contract.").

Conflict preemption occurs when compliance with both state and federal requirements is impossible, or "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English*, 496 U.S. at 79. The Ninth Circuit has not decided the preemption issue that is the subject of defendants' motion. However, the Ninth Circuit's decision in *Flick* provides some guidance in anticipating how the Ninth Circuit might decide the issue. [FN4]

> FN4. The parties in *Flick* stipulated to the preemption of the plaintiff's state law causes of action for breach of contract and the covenant of good faith and fair dealing. *See Flick*, 205 F.3d at

389.

In *Flick*, the Ninth Circuit recognized and enforced a rule of "strict compliance" regarding the terms and conditions of SFIPs. *Flick*, 205 F.3d at 391-92 (denying coverage due to claimant's failure to comply with SFIP's "60- day sworn proof of loss requirement"). This rule is based on the Appropriations Clause, which "preclude[s] a court from granting a remedy that draws funds from the Treasury in a manner not authorized by Congress." *Flick*, 205 F.3d at 391. Accordingly, "a WYO insurer has no choice but to strictly enforce SFIP requirements," and an insured may not obtain coverage in the absence of strict adherence to the policy's terms. *See Scherz v. South Carolina Ins. Co.*, 112 F.Supp.2d 1000, 1007 (C.D.Cal.2000).

*3 In reaching its conclusion, the Ninth Circuit emphasized "the unique interests involved when the federal government participates extensively in a flood insurance program that is national in scope." *Flick*, 205 F.3d at 396. The Ninth Circuit further stated:

> In adhering to a rule of strict compliance, we thus avoid disturbing the delicate balance ... between the need to pay claims and the need to ensure the long term sustainability of the [National Flood Insurance Program]. We also avoid the inconsistent results that would occur were we to treat standard flood insurance policies differently depending on whether they are written by WYO insurers or FEMA.
> *Id.* Thus, according to the Ninth Circuit, "there is a compelling government interest in assuring uniformity of decision in cases involving the [National Flood Insurance Program]." *Id.* at 396, n. 14.

The above language prompted one district court to doubt its own conclusion in a previous decision where it found no conflict preemption. *See Scherz*, 112 F.Supp.2d at 1002 ("The matter does not appear to me now as it appears to have appeared to me then."). In *Scherz*, the United States District Court for the Central District of California revisited the conflict preemption issue that it considered in *Cohen v. State Farm Fire and Ca.*, 68 F.Supp.2d 1151 (C.D.Cal.1999), and determined that *Flick* instructed a finding in favor of conflict preemption.

The court in *Scherz* pointed to an example where strict adherence to SFIP requirements conflicts with California law. *Id.* at 1007-1008. California law is more forgiving than federal law when a claimant provides defective notice or proof of loss. The standard under California law is whether the claimant "substantially complied" with the policy's filing requirements. *See id.* at 1007; *McCormick v. Sentinel Life Ins. Co.*, 153 Cal.App.3d 1030, 1046 (1984). A WYO insurer, however, must strictly enforce the notice and proof of loss requirements under an SFIP. *See Flick* at 391-92. Substantial compliance is not sufficient to warrant coverage on an SFIP claim. As a result, the application of state law would subject a WYO insurer to conflicting standards for determining coverage.

More importantly, the application of state law on the facts of this case would frustrate the accomplishment of the objectives of the NFIA and the flood insurance program. As the Ninth Circuit acknowledged in *Flick*, federal law governing flood insurance strikes a "delicate balance between the need to pay claims and the need to ensure the long term sustainability of the [program]." *Flick* at 396. "The success of the [program], so far, has depended on the ability of the federal government and participating insurers to offer flood insurance at below actuarial rates." *Id.* In order to motivate the payment of claims by WYO insurers, the program provides an incentive for the payment of claims by providing WYO insurers with a commission on paid claims. *See Scherz*, 112 F.Supp. at 1008.

**\*4** The threat of potential bad faith liability could undermine this partnership because WYO insurers, who currently issue ninety percent of the SFIPs under the program, would be less willing to participate in the program. *See Neill v. State Farm Fire and Cas. Co.*, 2000 WL 1886573,\*6 (E. D.Pa.2000). Moreover, WYO insurers who are not discouraged from participation would likely err on the side of overpaying claims, a result which could jeopardize the sustainability of the program's "delicate balance." *See Scherz*, 112 F.Supp. at 1008; *Flick* at 393 (recognizing that in most cases, WYO insurers deplete their net premium income and draw funds from the United States Treasury to pay losses under SFIPs).

In addition, the applicability of state law would undermine the objective to create a nationally unified program for flood insurance. *See* 42 U.S.C. § 4001; *Flick*, 205 F.3d 396, n. 14. ("[T]here is a compelling government interest in assuring uniformity of decision in cases involving the [National Flood Insurance Program]."). According to the United States, **"allowing State regulators to breathe down the necks of WYO companies, as happened here, would make the 50 States co-administrators of the program along with FEMA, a result Congress plainly did not intend."** *Neill*, 2000 WL 1886573,\*7 (quoting U.S. Government Amicus Brief filed in *Van Holt*, 163 F.3d 161 (3rd Cir.1998)).

Finally, because WYO insurers such as Allstate are only compensated when they make payments on a claim, no purpose would be served by subjecting them to liability for breach of the covenant of good faith and fair dealing, or negligent and intentional infliction of emotional distress. WYO insurers have no financial incentive to deny coverage, and thus, there is no legitimate risk of bad faith or other tortious conduct in the handling of SFIP claims. [FN5]

> FN5. Cases involving the handling of a claim of loss, such as this case, are distinct from those cases involving misconduct in the procurement of SFIPs. *See Neill v. State Farm Fire and Cas. Co .*, 2000 WL 1886573,\* 5,\*6 (E.D.Pa.2000) ("the built-in financial safeguard against bad faith is not present in the procurement context");

*Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F.Supp.2d 513, 521-22 (D.N.J.2000).

The cases cited by plaintiffs are not persuasive. As discussed above, the United States District Court for the Central District of California questioned its prior decision in *Cohen* after the Ninth Circuit's decision in *Flick*. *Compare Scherz*, 112 F.Supp.2d at 1002, 1007-1010, *with Cohen*, 68 F.Supp.2d at 1154-1160 (District Judge Matz presiding in both cases). In *Van Holt v. Liberty Mutual Fire Ins. Co.*, 163 F.3d 161 (3rd Cir.1998), the Third Circuit did not squarely address the preemption issue, but rather determined that the district court had subject matter jurisdiction over "claims sounding in tort arising out of the investigation or adjustment of insurance policies" issued under the NFIA. *Id.* at 167. Although this holding implicitly suggests that tort claims are not preempted by federal law, the opinion provides no analysis of the principles governing preemption.

In *Davis v. Travelers Prop. and Cas. Co.*, 96 F.Supp.2d 995 (N.D.Cal.2000), the district court held that conflict preemption did not preclude the plaintiffs' suit for damages resulting from the defendants alleged misrepresentation during the processing of plaintiffs' SFIP claim. [FN6] *See id.* at 1003-1004. In reaching its conclusion, the *Davis* court found no actual conflict on the specific facts of that case, and no frustration of Congress' objectives under the NFIA. *Id.* at 1004-1005. The court distinguished *Flick* because that case involved a payment on an SFIP claim, which comes out of the United States Treasury, whereas the *Davis* court had dismissed the plaintiffs' claim for payment on the policy. *See id.* at 1006. The court further emphasized that "a judgment for plaintiffs on the state-law claims would not be against FEMA, but rather against the [WYO insurer- defendant]." *Id.* at 1004.

> FN6. Specifically, the plaintiffs alleged that the defendants failed to inform them that a sworn proof of loss was required to obtain coverage. *See Davis* at 997-998. The defendants later denied coverage on the ground that the plaintiffs failed to provide such a sworn statement. *See id.*

**\*5** The *Davis* decision is not persuasive because, in the view of this court, it is inconsistent with the Ninth Circuit's finding that a claim "against [a WYO insurer] in federal court is, in reality, a claim against the federal government." *Flick*, 205 F.3d at 393-94, n. 10; *see also Van Holt*, 163 F.3d at 167. Moreover, the *Davis* court appears to have given no weight to arguments presented by FEMA in an amicus brief asserting that both field and conflict preemption bar state law tort claims arising out of a WYO insurer's handling of an SFIP claim. These arguments are entitled to some deference in light of the agency's unique ability to comprehend the impact of state requirements on this complex statutory and regulatory framework. *See Geier v. American Honda Motor Co., Inc.*, 529 U.S.1913, 1926 (2000) (placing "some weight" on an agency's position

regarding a preemption issue because "Congress has delegated to [the agency] authority to implement the statute; the subject matter is technical; and the relevant history and background are complex and extensive"); *but see Smiley v. Citibank,* 517 U.S. 735, 744 (1996) (preemption questions are decided de novo by the courts). Accordingly, the court concludes that plaintiffs' claims for breach of the covenant of good faith and fair dealing, and intentional and negligent infliction of emotional distress, are preempted by federal law. [FN7]

> FN7. Plaintiffs' fifth claim for relief seeks a declaration from the court "determining the rights of the parties under the insurance contract." (*See* Complaint ¶ 34, Ex. 2, Attached to Notice of Removal, Ex. 3). Defendants stated during oral argument that they are not moving to dismiss this claim as it relates to plaintiffs' first claim for breach of contract.

IT IS THEREFORE ORDERED that defendants' motion to dismiss claims two, three and four of the complaint be, and the same hereby is, GRANTED.

END OF DOCUMENT